JOHN H. DAVIS *et al. v.* JAMES G. REAVES *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Process. Recitals.* Recitals in a decree which the process and return show cannot be true, are not authority for the decree. The process will control, not the recital.

2. SAME. *Relief to defendant.* Where the bill shows a defendant to be one of the same class with complainant, and entitled to the same relief, and prays for decree in favor of that defendant, it will be granted though such defendant does not unite specially in the prayer of the bill.

FROM GREENE.

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

S. J. KIRKPATRICK and JOHN ALLISON for complainants.

ROBINSON & MALONEY, R. M. McKEE and H. H. INGERSOLL for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill was filed by complainants, part of the heirs of Sam'l W. Davis, who died in Greene county in 1864, leaving, besides complainants, two other children, as is stated in the bill, Eliza R., who had intermarrid with John Moore, and Elizabeth, who had married W. H. Kautz, but has died, leaving one child, whose name is Anne E. Kautz, a minor, and resident now of the State of Texas.

The deceased died possessed of a considerable real estate in Greene county. Reaves was appointed his administrator, and ultimately filed a bill in the chancery court, after having suggested the insolvency of the estate, to transfer the administration to that court.

This bill was filed the 13th of September, 1865, and charges the insolvency of the estate; that most of the personalty had been sold by the administrator; that the indebtedness was large, and it would be necessary to sell the real estate for payment of the debts. After an account showing the amount of the debts justly due and not barred by the statute of limitations, etc., a schedule of debts which had been presented to the administrator, was filed, amounting to upwards of $8,009. The administrator states that of the claims asserted against said estate, he has reason to believe most of them, and perhaps all, are just and *bona fide* debts against his intestate.

The heirs of the deceased are thus named, and asked to be made parties to this bill: Louisa Reed Davis, Mary Alice Davis, S. Virginia Davis, John Harrison Davis, and a grandchild, Anne E. Kautz. The father of this child, W. H. Kautz, and the child are made parties, and who are alleged to have been then in the State of North Carolina. The other children are stated to have been residents of Greene county, to be minors, and a guardian *ad litem* asked to be appointed for them, naming them.

In pursuance of an order of the chancellor, on the 21st of September, 1865, an order of publication was made requiring creditors to file their claims, as shown

by copy from rule docket, and the clerk enters at foot of this order the fact that a copy was handed to J. B. R. Lyon for publication in the "New Era." On the same day an order of publication is shown for W. H. Kautz and Anne E., his infant daughter, as non-residents, and a like entry showing copy handed to Lyon for publication.

At the November term of the court an order is entered in the cause as follows: "By consent, two months are allowed the guardian *ad litem* to file an answer, so as not to delay."

A subpœna was issued to the sheriff of Greene county for "Louisa R. Davis, Mary A. Davis, S. Virginia Davis and John Harrison Davis, minors, and Anthony Moore, guardian *ad litem* for said minors, and also as such guardian for Anne E. Kautz." They were to be summoned to answer the first Monday in November, the beginning of the regular term of the chancery court. Moore seems to have been appointed guardian *ad litem* at the October rules by the clerk and master. The deputy sheriff returned this subpœna with the following endorsement on it, not dated except as shown: "No such person as Louisa Davis found in my county. Executed the within on Eliza Davis on the 2d of October, 1865. Executed on Anthony Moore, and delivered a copy of original bill to him, on the 30th of October, 1865. The other defendants not to be found in my county. J. G. Gass, deputy sheriff."

On the 15th of November, a decree is entered as follows: "This cause came on to be heard before his

Honor, S. J. W. Lucky, chancellor, etc., at this term, and therefore, upon consideration that publication was duly made as to the said heirs, and that all other proceedings required by law were had in due form and time, it was ordered, that the master should ascertain and report the number of the heirs, the names of so many as were under the age of fifteen," etc. This was done with a view of seeing whether the year's allowance had been made for such heirs. The answer of the guardian *ad litem* was afterwards filed February 26, 1866.

On these facts, the object of the present bill is to have the sale of the land set aside and held void as to complainants and a cloud on their title, on the ground that they were not parties to the proceeding, therefore not bound by it, or by anything done in said proceedings affecting their rights.

It is a fundamental principle of our jurisprudence that no one is bound by the judgments or decrees of a court unless party to the proceeding, in some way, as may be provided by law. It is based on the idea embodied in our constitutions, State and Federal, that no man can be deprived of his property except by due process of law, and is a principle of such obvious justice as to need nothing said in support of it; its correctness approves itself on its bare statement.

It is now as well settled that all presumptions are in favor of the regularity of the action of judicial tribunals, and that the recitals of fact of this character in the face of their judgments and decrees are to be taken as true on a collateral attack, as this is,

unless the contrary appears to be true from the record itself; or in case of allegation of fraud in such statements, when they may be shown to be incorrect or not true, fraud vitiating everything, and its perpetration by judicial decree being as reprehensible as in any other form, and to be as readily relieved against.

The question on which this case turns, then, is, whether this recital that publication was had as to these heirs, stated to be residents of the State and of Greene county, is shown not to be true by the record, or that they were not in fact parties to the cause by publication.

Personal service in cases in chancery is dispensed with, and among other cases, "when the sheriff shall make return upon any leading process that the defendant is not to be found." This is as to residents of the county. Publication is required to be published "four successive weeks in the newspaper mentioned in his order of publication, or designated by the general rules of the court. This proceeding being statutory, the statute alone regulates it, and must be pursued, or else it is done without authority and ineffective. The return of the sheriff, not to be found, is the legal prerequisite to such a publication in a case like this. No order of publication could be legally made, or publication had, until this return is made officially, as the basis of the action of the master.

We think, on examination of the endorsement of the deputy sheriff in this case, that it is certain the return could not have been made before the 30th of

October. He says he had executed the subpœna on Eliza Davis on the 2d day of October, 1865, it is true, but adds: "Executed on Anthony Moore, and delivered a copy of original bill to him, on the 30th day of October, 1865, the other defendants not to be found in my county." The plain meaning of this is, that on the 30th he wrote out the return of all he had done with the process, reciting first the fact of service on Eliza Davis on the 2d, and then the service of Moore on the 30th, and then added, the other defendants not to be found.

The return of an officer is the written statement of what he has done under the process in his hands: 2 Head, 127. The only return shown in this record, and the only one made that authorizes the publication, is the one recited above. This could not have been done before the 30th, unless we are to infer that a return was made of a fact before it had occurred. It could not have been that this return was in the office of the clerk on rule day before, to-wit, the 2d day of October, 1865, because it shows on its face that the writ was retained in his hands to the 30th, by the recital in it of a fact done on that day, to-wit, the service on Moore, the guardian *ad litem.* The collocation of the words shows it impossible that part of the return, to-wit, "the other defendants not to be found in my county," could have been endorsed before the endorsement of the service on Moore on the 30th, as the language quoted is obviously a continuation of the previous recital, a fact added as a subsequent part of the return he was then making.

Davis *v.* Reaves.

The only return on which the publication could be made must be the written endorsement officially made of the fact by the officer. To test the view we have taken, suppose we assume the opposite—that is, that this return had been made on the 2d of October, 1865, when Eliza Davis was served with the process— we would have it thus, "the other defendants not to be found in my county," which would make it not only insensible, but contradictory ‚to itself, for on the 30th it shows Moore, whose name is in the writ, is found, and served with the writ and furnished a copy. As a matter of fact, we suppose no one assumes that the service was anyhow else than we have indicated. If so, then the simple question is, whether we shall make an inference in favor of the recital in a decree, which the paper which gives us all the information we have, or can legally have, of what the officer did, shows not to have been the truth of the case. This would be to hold that the recital should be conclusive evidence, though the record shows it is not and cannot be true,—and that there was in fact a return, not to be found, on . the 2d of October, 1865, when we have that return showing it was not made for twenty-eight days after this. If this could be sustained, then a return of the sheriff "not executed," without anything more, if there was a recital in a decree that the service was had, as shown by the return of the sheriff, would override that return and sustain the proceeding. We think no court has ever gone this far, and ought not, in order to sustain. a decree.

We therefore hold, that the recital in the decree

is conclusively and clearly contradicted by the record, and it is shown to have been impossible that publication for four successive weeks could have been had after the return "not to be found," because this return was endorsed on the 30th of October, 1865, and the decree reciting this publication made on the 15th of November, 1865. The sale of this land, then, is void as to complainants, and must be so held.

Several other questions are presented in this case which are necessary to be disposed of, as directly raised by the pleadings, or as springing incidentally from the result of holding the sale void as to the parties not served with process, nor properly made parties by publication.

First, was the sale void *in toto*, or only as to the persons not legally made parties to the suit?

This question has been definitely adjudged in several well-considered cases in our State. In *Valentine* v. *Cooly*, Meigs R., 618, a *sci. fa.* had been issued to reach land descended to heirs, part of whom were minors and part adults. No service was had on the minors, but service was had on the adults. The court held the judgment void as to the parties not served, and the sale of land under it void as to their interest, but valid as the adults, and the sale passing their title to the purchaser. In the case of *Winchester* v. *Beardin*, 10 Hum., 250, the same question was presented, and ruled the same way, citing the case from Meigs R. and approving it. At the same time the court expressly overrule, or rather explain and qualify the language of the court, apparently admitting of a

Davis *v.* Reaves.

different construction, and say it must not be understood as adjudging a different rule. The case of *Douglass et al.* v. *Harrison,* 2 Sneed, 382, is not an authority for a different rule, that being a case of private sale, made without authority as to three out of the five owners of the land. The conclusion of the court may well be doubted in that case, even on the ground on which the case is placed by the learned judge who delivers the opinion.

We think these cases are sound in principle, as well as authoritative as long-settled rules that affect titles acquired under judgments or decrees of our courts. The same principle that holds the judgment void as to a party not served with process because such a party has not had opportunity to maintain or defend his right, would necessarily hold a party who did have such opportunity bound, he having been regularly before the court, and not precluded from asserting his right by reason of failure to make others parties who might have an interest in the property in common with him. He cannot complain that other parties are not regularly before the court, if he himself is so, with perfect freedom to maintain his rights in the subject-matter of the litigation.

The next question presented is, can relief be granted against the sale in favor of other defendants to the original proceeding, who are simply made defendants in this case but do not join in bringing the suit, the case being made out in their favor?

A prayer is found in the bill of complainants, that they, together with their co-heirs, be restored to the

38—VOL. 7.

possession of the land, and for such orders and decrees in behalf of Anne E. Kautz as shall be in accord with her rights in the premises.

Under the cases decided by this court, of *Gentry* v. *Gentry,* 1 Sneed, 90; *Ingram* v. *Smith,* 1 Head, 427, and *Allen* v. *Baugus,* 1 Swan, 406, it has been definitely settled that where the parties have an interest as tenants in common, as in the first case, or a joint interest as in the other cases, it makes no difference whether they be defendant or complainant in a court of chancery, the court will decree their rights, unless the defendants waive, relinquish or disclaim the title in controversy.

In the case in 1 Sneed, the complainants and a defendant were tenants in common, and as such entitled to redeem a tract of land sold as the property of their ancestor. One of the parties claimed to have made a tender that fixed the right to redeem the land, which was refused. All the parties except one joined in a bill to enforce redemption. This one was made defendant, and answered, giving as reasons for not joining in the suit, that he doubted the validity of the tender and was not willing to join in the suit fearing it would fail and he be involved in costs, and then referred the question of the validity of the tender to the chancellor, stating he preferred the title should remain in the purchaser rather than go to the party who had made the tender. It was urged that he had relinquished his right, and the chancellor so held, but this court reversed that holding, and held he had not relinquished or disclaimed his right, and gave a

decree in favor of complainants, and specifically in favor of this defendant, taxing him, however, with half the costs on account of the character of his answer.

In the case of *Ingram* v. *Smith,* 1 Head, in a like case of contest as to title to negroes, where a portion of the owners were defendants, it was insisted that relief could only be granted to the complainants, and could not include defendants.    Cooper, Sp. J., giving the opinion of the court, said on this point: "We do not think so.    It is the settled law of the court of chancery that a decree may be made between co-defendants, grounded upon pleadings and proof between the complainant and defendants, and founded upon and connected with the subject-matter in litigation between the complainant and one or more of the defendants; and it is the constant practice of courts of chancery to make such decrees to prevent multiplicity of suits."    For this he cites the case from 1 Sneed, with other cases, and in this case he added, that "the fact that the defendants on whose behalf the decree is sought have been brought before the court by publication, could make no difference."    In a subsequent part of the opinion it was said, if the defendant's heirs had renounced their claim, the defendants were at liberty to show it, and would have all the benefit of it, as upon personal service of process upon these defendants, and if these defendants fail or declined to come forward and take any benefit under the decree, it would simply enure to the benefit of their co-defendants, the property remaining in the possession of the defendants.

And so in this case, applying these principles, as to all the parties not served with process or not made parties legally by publication, their rights are settled by this adjudication in their favor, and if they fail to take under the decree, then defendants, the pur-chasers of the land, being in possession, will retain that possession, and the failure will enure to their benefit.

In this view of this case, it becomes necessary to see whether the defendant Anne E. Kautz, the minor grandchild, has been deprived of her rights in the lands of her grandfather under these proceedings. Her case is also before us on writ of error, she being still a minor. It is charged in this bill that Anne E. Kautz was in fact a citizen of Tennessee at the time of filing the original bill—a resident thereof, and so remained for several months after said bill was filed, but no process was served on her, but publication made as in case of non-residents. The fact is, she is charged in the original bill to be a non-resident, and a guardian *ad litem* asked to be appointed to defend for her, she being a minor. At the October rules, after filing the bill, an order of publication was made, and due publication no doubt had. If she was in fact a resident of the State, this publication was unquestionably without authority of law, and void, and failed to make her a party to the case,—no return of not to be found being pretended as to her, as the record shows no process issued or was prayed as to this defendant, she being, as stated, in North Carolina. The answer of Moore and wife, formerly Eliza Davis,

says they returned from North Carolina, where they had been temporarily, bringing the minor child Anne with them, on July 28, 1865. One of the other sisters, who had remained in North Carolina, says she came to Greene county about the 1st of October, 1865, and that the child Anne was then in Washington county, county, Tennessee, at her aunt's, Nancy Crouch,—that was her home. We take the fact to be established that she was in Tennessee at the time of filing the bill. This being so, then, as we have said, the publication was a nullity as to her, and failed to make her a party, and she is not bound by the decrees made in this case.

The only other question presented in this case is, where the sale of the land is held void as to parties not legally made defendants, what shall be the result as to the purchasers, who have paid their money and the same been appropriated in the course of the administration suit?

It is settled by repeated adjudications of this court, that a purchaser in such case is entitled to be subrogated to the rights of creditors who were *bona fide* such, and whose debts, therefore, were a charge, or might have been so made, upon the land in the hands of the heir.

But the question is, are these parties, who were not legally before the court in the administration suit, bound by the decrees in that cause ascertaining the debts due, the same being made between the administrator and creditors alone, in a proceeding to which these heirs were not parties?

We have held in a case precisely like this, at Jackson, a few years since, that the heirs were not so bound, but the debts must be shown to have been *bona fide* debts, on remanding the case, by competent proof, before they can be fixed as a charge on the land as against the heir. The same ruling was had in the case of *Miller, adm'r,* v. *Taylor,* September term, 1877.

We think this conclusion is so clear on principle as scarcely to need argument to support it. It is axiomatic in our jurisprudence that a party is not bound by judgment or decree unless he be a party, or privy to some one who was a party, and thus bound by reason of such privity.

We take it that it is equally axiomatic, that the administrator only represents the personalty of an intestate, and does not represent the heir, nor can he bind his estate, nor can it be bound by him, or by proceedings against him, so as to conclude the rights of the heir, when his real estate is sought to be reached for payment of his ancestor's debt. This is so recognized in all our statutes providing for sale of lands for the payment of the ancestor's debts, by requiring the heir to be made a party to the proceeding, whether by *sci. fa.,* or under the act of 1827, sec. 2267; and if not parties, such sales have uniformly been held void: *Crippen* v. *Crippen,* 1 Head, 128; *Estes* v. *Johnson,* 10 Hum., 223. This is specially provided for in cases of insolvent estates, whether in the county or chancery court: secs. 2338 and 2380. The latter section, for cases in chancery court, pro-

viding: "And where there is real estate which belonged to the deceased, the devisees or heirs, or others interested therein, shall be made parties." And by sec. 2388: "Where the personal estate, by report of the master, confirmed, is found insufficient for payment of debts, the court shall then direct the sale of the real estate." And it was held in *Frazier* v. *Pankey,* 1 Swan, 75–79, that if the sale take place without such an account, or where the report has been excepted to and not confirmed, it is invalid; and in that case, on bill filed by the purchaser to enforce the sale, it was refused, the court holding the sale void.

In view of these settled principles, we hold that the ascertainment of the indebtedness as between the administrator in the original case, can have no effect whatever in establishing the validity of the claims as against the heirs or the lands to them descended.

It would be an idle ceremony to declare the sale for the payment of these debts void because the heirs were not parties, and then hold that the debts were conclusively ascertained by the decrees made between the administrator and creditors were conclusive as to the debts, and such debts established as *bona fide* debts against the land, and therefore to be immediately fixed upon the land in favor of the purchasers, as debts paid by their money bid on the purchase of the land. This would be to hold the heirs not bound by the sale because not parties to the proceeding in which it was ordered, and, at the same time, that the proceeding did bind them, notwithstanding they were not

parties, in all that was preliminary to the sale, and authorized it to have b en made, if they had been parties to the suit, and thus fix the results of the proceeding on the land as fully and completely as if they had been parties with all the rights of parties, and had contested the claims of creditors as they were presented. We do not think this can be done, or that the heir can be bound by any result of such a proceeding unless he is a party, with an opportunity to contest the claims sought to be set up against his estate, by which it is sought to be sold and he deprived of his inheritance.

We therefore hold, that the purchasers will be entitled to be subrogated to the rights of creditors of the estate, to all such debts as may on investigation be shown to have been *bona fide*, legal claims against the estate, and which have been discharged by appropriation of the purchase money, or to the extent they have thus paid *bona fide* debts that were legal demands against the estate of their ancestor and a proper charge on their land, to be ascertained on taking the account.

The question of liability of the administrator for rents of the land received by him, is not made in complainants' bill, and therefore need not be considered. It is clear the heir is entitled to the rents until the land is sold for the ancestor's debt, as we have lately held at Nashville, but the claim of the heir would be one against the party wrongfully receiving his money, or against the occupier of his land.

The result is, the former decree in this case will be vacated, and a decree entered in accord with this

opinion, and the case remanded for taking the accounts proper between the parties, and for further orders and proceedings as may be necessary to effectuate the rights of the parties. The costs of this court will be paid by defendants.

COOPER, J., delivered the following dissenting opinion:

Bill to set aside sales of complainants' lands made, under decrees of the chancery court in an insolvent case, when the complainants were infants. The chancellor granted the relief sought, and the administrator, at whose instance the sales were made, and the purchasers at the sales, appealed.

In June, 1864, Samuel W. Davis died in Greene county intestate, leaving five children—John H. Davis, Mary Alice Davis and S. Virginia Davis, who are complainants in this bill; Eliza R. Davis, who intermarried with John Moore, and Ann E. Davis, who intermarried with W. H. Kautz, and died leaving one child, Ann E. Kautz. Moore and wife and Ann E. Kautz are defendants to this bill. In April, 1865, J. G. Reaves, also a defendant, became administrator of the estate of Samuel W. Davis, and, as such, suggested the insolvency of the estate to the county court, and filed a bill, on September 13, 1865, in the chancery court, against the heirs and creditors, to transfer the administration to that court, and sell the lands descended for the purpose of paying the debts. Such proceedings were had in that cause that the debts of

the estate were ascertained to exceed $20,000, while the personal assets fell considerably under $1,000, and the lands were sold for about $13,000. The rents of the land, which seem to have been collected by the administrator, were also appropriated in that cause to the payment of debts. The entire assets, real and personal, fell short of paying the debts by over ten thousand dollars. The present bill was filed on May 9, 1876, against the administrator and the purchasers of the lands to have the insolvent proceedings declared void as to complainants. To this bill Moore and wife and Ann E. Kautz are made defendants.

The bill contains some general charges of fraud against the administrator in connection with the insolvent bill and his management of the estate. No effort has been made to sustain these charges, and there is nothing in the record of the insolvent suit, which is introduced in evidence, which tends to show bad faith on the part of the administrator. He seems to have scrupulously accounted for the assets which came to his hands, and to have, with the aid of counsel, carefully investigated the claims presented against the estate. He was represented by counsel, and cannot be held responsible for the mode in which the suit was conducted, even if that mode, which does not appear, was in any respect a departure from the usages of the court in such cases.

If the proceedings in the insolvent suit are to be measured by the strict rules laid down by this court for the proper conduct of such cases, when objection is made in time to any other course, they are in

some respects irregular.   Creditors made defendants by the bill in such causes should answer, setting out their claims with reasonable certainty, and, if not named in the bill, should come in by petition and answer: *Reid* v. *Huff*, 9 Hum., 345.   This degree of particularity, it is notorious, has rarely ever been rigidly enforced.   It would be too exacting on small creditors, whose claims are not contested, and too expensive to the estate.   The Code, sec. 2378, provides for the filing of claims with the clerk, either in vacation or term time, to save the operation of the statute of limitations, and such filing is usually sufficient, for all practical purposes, to enable the administrator, the heir or the other creditors to satisfy themselves in regard to the claim.   It has, accordingly, been held that where the personal representative in his bill sets out the debts of the estate, admitting their validity, and takes the bill for confessed, no exception being taken by the heirs or other creditors, the debts are thereby sufficiently authenticated, and the creditors stand as judgment creditors: *Henderson* v. *McGhee*, 6 Heis, 56.   Such a recognition would prevent the running of the statute of limitations: *Bibb* v. *Turkington*, 2 Lea, 24.   It has also been held that where the claims are merely filed, without petition or answer, reported upon, and the report confirmed without exception, the creditors whose claims are thus recognized become parties to the suit and judgment creditors: *Ewing* v. *Maury*, 3 Lea, 381; *Caruthers* v. *Caruthers*, 2 Lea, 264.   The proceedings are valid upon appeal, and for a much stronger reason upon a collateral attack.

There was irregularity in appointing the guardian *ad litem* for the infant defendants before they were brought into court by process or publication, but such irregularity is not fatal to the proceedings: *Greenlaw* v. *Kernehan*, 4 Sneed, 371. It was also irregular to make a decree of reference before the infants had answered by their guardian *ad litem*, but this irregularity was rectified, at the next term, after answer filed, by ratifying the former order, and confirming what was done under it, there being no exception on the part of the infants: *Livingston* v. *Noe*, 1 Lea, 61. Another irregularity is insisted upon, which, however, was rather in form than substance. The master, in his report to the May term, 1866, made out a detailed list of the liabilities of the estate, showing an indebtedness of $23,153.02. He also found that the personal assets with which the administrator was chargeable were only $529.15, leaving a balance of debt of $22,623.17, to be met by the realty and its rents. To this report the administrator filed exceptions to certain claims, aggregating about $1,200. The chancellor confirms the master's report "in all things," reserving the exceptions for his decision. The decree, however, further recites that it appeared that some of the claims were for current funds, and subject to deduction, and re-commits the report to the master to hear proof and report "the value of the claims which may be subject to such deduction or be without foundation," with leave to the parties to except to the report during the next term. The report, under this recommittal, was not finally made until the November

Davis *v.* Reaves.

term, 1868, when the liabilities, after some of them had been scaled, were ascertained to be $23,211.88. In the meantime the realty had been sold, and the sale confirmed at the November term, 1867. If, now, the result of the investigation had reduced the indebtedness below the value of the realty, the irregularity might have been prejudicial to the heirs. As it was, the debts reported to the May term, 1866, and not excepted to, and recognized as valid by the confirmation of the report by the court, were again found to exceed the assets, real and personal, of the estate. The delay, with a view to the scaling of a portion of the claims, enured to the benefit of the heirs. The debts were found to exceed the personal assets, and the final accounts were in substantial accord with those made in the first instance.

No fraud being shown to impeach the insolvent proceedings, either by direct proof or by the proceedings themselves, the bill before us is a pure ejectment bill. The complainants are seeking to recover the lands which descended to them from their father, upon the ground that the sales under the insolvent proceedings were void. Their bill attacks the validity of those proceedings collaterally: *Starkey* v. *Hammer*, 1 Baxt., 441; *Kindell* v. *Titus*, 9 Heis., 727. Those proceedings come before us precisely in the same way as if an action in ejectment had been brought by the complainants for the land: *Britain* v. *Cowen*, 5 Hum., 315. In this view, the weight of authority in this State, in accord with the current of decision elsewhere, is that if the court have jurisdiction of the person

and the subject matter, its proceedings cannot, even at the instance of an infant, be held to be void as to third persons claiming under its judgment or decree, after the final disposition of the case, whether the jurisdiction be inherent or statutory, the statute being of a general nature: *Kilcrease* v. *Blythe*, 6 Hum., 378; *McGavock* v. *Bell*, 3 Cold , 512; *Andrews* v. *Andrews*, 7 Heis., 245. And, it need scarcely be added, the court of chancery, being a court of general jurisdiction, every presumption is in favor of the regularity of its proceedings.

The court, in this instance, had jurisdiction of the subject matter, the administration of an insolvent estate, after the insolvency had been suggested in the county court, and the sale of lands descended for the payment of the ancestor's debts. The only doubt is whether it had jurisdiction of the persons of the infant complainants. The insolvent bill made the present complainants parties defendant by name, together with their sister Eliza R. by the name of Louisa R., as infants without a general guardian, and citizens of the county of Greene. Ann E. Kautz was also made a defendant as an infant and non-resident of the State. The intestate had taken his family to North Carolina in March, 1864, and had returned and died in June of that year. His daughter Eliza, with one of her sisters, probably her sister Ann, the mother of Ann E. Kautz, had returned to Greene county in the summer of 1865. The other children came back, according to the testimony, in September or October of that year. The insolvent bill was filed on the 13th of

September, 1865. At the October rules a guardian *ad litem* was appointed for all the minor defendants, and a subpœna was issued for him and them, except Ann E. Kautz, who was proceeded against as a non-resident by publication. The officer returns on the subpœna that, no such person as Louisa Davis being found in his county, he executed the subpœna on Eliza Davis upon the 2d of October, 1865; that he executed the subpœna on the guardian *ad litem*, naming him, on the 30th of October, 1865, and adds: "The other defendants not to be found in my county." In the interlocutory order made by the chancellor on the 15th of November, 1865, he directs, among other things, that the master report the number and names of the minors, if any, who were under the age of fifteen at the time of the intestate's death; whether any allowance, as required by law, had been made for their support by the complainant, the administrator; whether the exempt property was sold by him, for what amount, and what would be an equitable remuneration to said heirs instead thereof. On the 15th of February, 1866, the guardian *ad litem* put in an answer, subscribed and sworn to by him, for all the infants, including the present complainants. This answer is not a mere form, but fuller than usual, and exhibits a list of articles taken by the administrator which, the guardian says he is informed, belong to his ward Ann E. Kautz, and asks that they or their money value be awarded to her. On the 4th of April, 1866, the master, at the instance of the guardian *ad litem*, takes the deposition of Eliza R. Davis, one of his wards,

to prove that her brother John and her sister Virginia were under fifteen years of age at the death of their father, and that no allowance had been made out of the father's estate for their support. Another deposition is taken, at the instance of the guardian *ad litem,* to prove that exempt articles were sold by the administrator, and their value. At the May term, 1866, the master reports $125 to each of the two children, John and Virginia, as a reasonable support for one year, and that the administrator had sold exempt property of the value of $124. The chancellor, at the same term, ordered that $125, out of the assets of the estate, be paid to each of the said infants, John and Virginia. The claim of Ann E. Kautz, set up by the guardian *ad litem* in his answer, was afterwards reported upon and allowed. The master, in one of his reports, which is confirmed, includes an item of $150 paid by him to the solicitor of the minor children of the intestate, in part of the $250 allowed them as above.

These facts leave no room for doubt that the insolvent suit was proceeded with under the belief that the infant children of the intestate were before the court, properly represented by guardian *ad litem,* and that their interests were looked after as well as they could be upon the supposition, manifestly entertained by all parties, that the estate was hopelessly insolvent. These facts would not, however, make the infants parties to the suit, if, in fact, they were not properly brought before the court. They merely make it the duty of the court to examine the record carefully with

a view to ascertain the truth, under the rule that presumes everything in favor of the proceedings of a court of superior jurisdiction.

The first decree rendered in the cause bears date the 15th of November, 1865, and is thus commenced:

"James G. Reaves, Adm'r,
*v.*
"The Heirs of Sam'l W. Davis, dec'd, and others.

"This cause came on to be heard before his Honor the chancellor, at this term, and, therefore, upon consideration that publication was duly made as to the said heirs, and that all other proceedings required by law were had in due form and time, it is ordered, adjudged and decreed," &c.

This decree was made before the guardian *ad litem* had put in the answer of the infants. After he had answered, at the May term, 1866, under the same heading, another decree is entered thus: "This cause came to be further heard before his Honor the chancellor, at the present term, upon the answer of the guardian *ad litem* of the said minor heirs, &c., and it is therefore ordered, adjudged and decreed by his Honor the chancellor, that all former orders and decrees in this cause, and the report of the master taken pursuant to an interlocutory order of this court, the same being unexcepted to by either party, save the matters that appear in the exceptions (of the administrator) filed thereto, be and are hereby in all things confirmed," &c.

39—VOL. 7.

By the last of these decrees it was obviously the intention of the chancellor, in view of the fact that the order at the previous term had been made before the infants had answered by their guardian *ad litem*, to validate those proceedings, now that the answer had been put in. His Honor considered that the infants were all in court. So far as the record speaks positively, process had only been served on Eliza R. Davis. Are the omissions supplied by the first decree, which undertakes to say that publication was duly made as to the heirs, and that all other proceedings required by law were had in due form and time?

It has been held by this court, in an attachment case and upon a writ of error, that the recital in a decree against a non-resident that publication had been duly made was conclusive of the fact when there was nothing in the record to contradict it: *Claybrook* v. *Wade*, 7 Cold., 556; *Howard* v. *Jenkins*, 5 Lea, 176. The same ruling has always been made when the proceedings were collaterally attacked: *Kilcrease* v. *Blythe*, 6 Hum., 378; *Gilchrist* v. *Cannon*, 1 Cold., 587; *Walker* v. *Cottrell*, 6 Baxt., 257. In this last case, the recital of the decree is said to be sufficient "unless contradicted by the record itself." In *Hopper* v. *Fisher*, 2 Head, 254, the decree merely recited that the cause came on to be heard, before the chancellor, upon the bill and answer of the minor defendants by their guardian *ad litem*. In the records no subpœnas were found, nor did it appear whether any ever issued or existed, or whether the infant defendants were ever

served with process, or had notice by publication or otherwise, as required by law. Nor was any order appointing a guardian *ad litem* to be found, and in one of the records the answer of the guardian *ad litem* did not appear. "A court of chancery," says Judge Wright, who delivers the opinion, "is a superior court. When we see, therefore, that the court had jurisdiction over the subject matter of these decrees, and undertook to, and did declare the rights of the parties, the infant defendants being represented by their guardian *ad litem*, we should now, in a mere collateral attempt to impeach them, especially after such a lapse of time, presume that the defendants were duly served with process, or in some way had the proper notice, so as to give the court jurisdiction of their persons."

The recital in the decree before us is that publication had been made as to the heirs. If the bill had averred that the heirs were non-residents, the recital would have been sufficient. The heirs of the intestate had been removed to North Carolina, and, no doubt, had not returned, except Eliza, when the process was served upon the latter. By the Code, sec. 4352, sub-sec. 3, personal service of process is dispensed with, when the sheriff shall make return upon any leading process that he (the defendant) is not to be found. Such a return was made in this case. By sec. 4356, the order for publication may be made at any time after the filing of the bill. Whatever may be the proper construction of these provisions as to the time of publication, we know that the publication was often made at once, upon

the return of not found: *Grewar* v. *Henderson*, 1 Tenn. Ch., 76; *Wessells* v. *Wessells*, 1 Tenn. Ch., 60. Such a publication was probably made in this case, about the 2d of October, 1865, when the subpœna was served on Eliza and the other defendants not then found. For, although the return was not written until after service on the guardian, it may have been made at an earlier date. There is, at any rate, nothing in the record to contradict the recital of the decree, and it must be held to be sufficient.

The rents received by the administrator were disposed of by the court in the insolvent case, and this action of the court is as conclusive on the infants as the other orders and decrees. Besides, the bill is not shaped with a view to the recovery of rents, not a word being said on the subject. The complainants having failed to recover, the heirs who are made defendants can of course take nothing, even if this be a case where they would be entitled to share in the recovery.

I am, therefore, of opinion that the decree should be reversed and the bill dismissed.

GEORGE ANDREWS, Sp. J., concurs in the above opinion.