IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2025 Session

**KIMBERLY P. URQUIA v. ERIC D. NEAL**

**Appeal from the Circuit Court for Shelby County
No. CT-4579-22     Cedrick D. Wooten, Judge**

_____

**No. W2024-01842-COA-R3-CV**

_____

This case involves the application of Tennessee Code Annotated section 56-7-1206(d) in a personal injury lawsuit in which the plaintiff seeks to proceed directly against her uninsured motorist insurance carrier. The trial court granted summary judgment to the carrier. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., joined. VALERIE L. SMITH, J., filed a separate dissenting opinion.

James E. Blount, Memphis, Tennessee, for the appellant, Kimberly P. Urquia.

Bailey L. Walden, Memphis, Tennessee, for the appellee, Progressive Casualty Insurance Company.

**OPINION**

**I.     FACTS & PROCEDURAL HISTORY**

This appeal stems from a personal injury lawsuit filed as the result of a car accident. This case was dismissed at the summary judgment phase; therefore, our recitation of the facts is taken largely from those listed in the complaint.

On June 16, 2022, Kimberly Urquia was involved in a car accident with Eric Neal, an uninsured motorist. Ms. Urquia filed a complaint against Mr. Neal on November 10, 2022, in which she raised a personal injury claim based on negligence. The same day, Ms. Urquia had a summons issued for Mr. Neal. Shortly thereafter, Ms. Urquia had a summons

issued for Progressive Casualty Insurance Company ("Progressive"), her uninsured motorist insurance policy carrier.[1] The summons issued to Progressive was timely and properly served.

The summons issued to Mr. Neal was returned unserved on February 14, 2023. The summons was stamped: "NOT TO BE FOUND AFTER DILIGENT SEARCH AND INQUIRY." The summons also contained a notation from the process server that provided, "avoiding service/said he would not cooperate." Subsequently, Progressive filed a motion for summary judgment on July 26, 2024, more than one year after the summons to Mr. Neal was issued and returned unserved. No other attempts at service had been made. Progressive claimed that as Ms. Urquia had neither served Mr. Neal within one year of the issuance of the summons nor made any additional attempts to do so, the cause of action was time barred as to Mr. Neal. Accordingly, Progressive maintained that Ms. Urquia was unable to proceed against it directly as the uninsured motorist insurance carrier because the action had not been properly commenced against the uninsured motorist. Progressive filed an accompanying statement of undisputed material facts in support of its motion. The statement of facts noted that the original summons issued to Mr. Neal was returned unserved and the "private process server certif[ied] that the summons was not served because Defendant Neal was 'avoiding service/said he would not cooperate[.]'" Ms. Urquia disputed this fact, noting that the summons had been "returned marked 'NOT TO BE FOUND AFTER DILIGENT SEARCH AND INQUIRY', as required for purposes of Tenn. Code Ann. § 56-7-1206(d)."[2] Ms. Urquia claimed that the terms of Tennessee Code Annotated section 56-7-1206(d) permitted her to proceed against Progressive despite her failed attempt to serve Mr. Neal because she had been "diligent in attempting" to do so and "[the] summons was returned marked" with the statutory language.

A hearing on the motion took place on September 27, 2024. Counsel for Progressive acknowledged that the summons contained the "not to be found in my county" language but claimed that the process server's notation demonstrated that Ms. Urquia's attempted service had not triggered the terms of Tennessee Code Annotated section 56-7-1206(d). Counsel argued that, as a result, Ms. Urquia had been required to re-attempt service of process intermittently throughout the life of the case and, as no subsequent attempts at

---

[1] An alias summons was also issued for Mr. Neal on December 29, 2022. However, the original summons issued to Mr. Neal had not yet been returned when the alias summons was issued. It appears that Ms. Urquia never attempted to serve the alias summons.

[2] The statute provides:

> [i]n the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, 'Not to be found in my county,' or words to that effect . . . the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

Tenn. Code Ann. § 56-7-1206(d).

service had been made, the statute of limitations had run as to Mr. Neal. Counsel also argued that subsection (d) was inapplicable to situations in which a defendant's location was known and service was being avoided. Counsel pointed to the terms of Tennessee Code Annotated section 56-7-1206(e), which provides: "[i]n the event the uninsured motorist's whereabouts is discovered during the pendency of the proceedings, an alias process may issue against the uninsured motorist." Tenn. Code Ann. § 56-7-1206(e). Counsel claimed that this demonstrated the discovery of Mr. Neal at his residence rendered subsection (d) inapplicable because this separate subsection was designed to apply to circumstances similar to those present in this case. Conversely, Ms. Urquia's counsel averred that there was "no additional requirement that if the defendant is not to be found because they're evading service or something like that [it] means that the plaintiffs need to go continue efforts to achieve service of process[.]" Counsel claimed that the terms of the statute had been met and therefore, Ms. Urquia was able to proceed with her claims against Progressive directly.

The trial court entered its final order on November 13, 2024. The trial court found that subsection (d) was "inapplicable to the matter at hand as [Mr. Neal] was at his residence, he simply would not accept service." The trial court explained that "[t]he inapplicability of T.C.A. § 56-7-1206(d) [was] further confirmed by section (e)" as "[w]hen these two sections are read in conjunction, the intent is clear that (d) is applicable for defendants who are not to be found at their residence. As established, [Mr. Neal] was found at his residence, he simply refused to accept service and no further attempts were made." Accordingly, the trial court granted Progressive's motion for summary judgment. The trial court found that the claim against Mr. Neal was time barred due to Ms. Urquia's failure to timely reissue process in accordance with Tennessee Rule of Civil Procedure 3 and therefore, Ms. Urquia was unable to maintain her action against Progressive as the insurance carrier. Ms. Urquia filed this appeal.

## II.  ISSUES PRESENTED

Ms. Urquia presents the following issue for review on appeal, which we have reproduced as presented in the brief:

1. Did Plaintiff fully comply with Tenn. Code Ann. §56-7-1206(d) in her failed attempt to serve the uninsured Defendant, so that her claim may proceed against her uninsured/underinsured motorist carrier, which was properly and timely served?

For the following reasons, we affirm the decision of the trial court.

## III.  STANDARD OF REVIEW

To begin, we outline the standards applicable to appeals of trial court decisions regarding motions for summary judgment. Our state rules of civil procedure provide that

summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the burden of proving that its motion satisfies these requirements." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). "To do so, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or show that the nonmoving party cannot prove an essential element of the claim at trial." *Mershon v. HPT TA Props. Tr.*, No. M2023-01334-COA-R3-CV, 2024 WL 4471404, at *4 (Tenn. Ct. App. Oct. 11, 2024), *perm. app. denied* (Tenn. Mar. 13, 2025) (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008)). Regardless of whether the nonmoving party bears the burden of proof at trial on the challenged claim, "at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015)). When reviewing a motion for summary judgment, a court places its focus "on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced" at a future trial. *Rye*, 477 S.W.3d at 265.

The decision to grant or deny "a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness." *Jackson v. Thibault*, No. E2021-00988-COA-R3-CV, 2022 WL 14162828, at *3 (Tenn. Ct. App. Oct. 25, 2022). When reviewing these decisions, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Martin*, 271 S.W.3d at 84.

## IV. DISCUSSION

This appeal centers around whether Ms. Urquia will be permitted to proceed with her claim against Progressive directly as her uninsured motorist insurance carrier or if her claims are time barred for failure to reissue process in accordance with Tennessee Rule of Civil Procedure 3. Tennessee Code Annotated section 56-7-1206 "sets out the procedures a party must follow in order to bring its uninsured motorist carrier into a case against a tortfeasor." *Winters v. Estate of Jones*, 932 S.W.2d 464, 465 (Tenn. Ct. App. 1996). Typically, a plaintiff is not permitted to proceed with such a lawsuit against the insurance carrier directly. *Id.*; *see also Little v. State Farm Mut. Ins. Co.*, 784 S.W.2d 928, 929 (Tenn. Ct. App. 1989). However, the terms of Tennessee Code Annotated section 56-7-1206(d) "created the possibility of such a direct action, in situations where the tortfeasor himself cannot be reached by process." *Id.* As previously noted, Tennessee Code Annotated section 56-7-1206(d) explains that:

[i]n the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, 'Not to be found in my county,' or words to that effect . . . the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

Tenn. Code Ann. § 56-7-1206(d). Notably, as explained *infra*, compliance with this subsection also permits a plaintiff to proceed against an insurer without complying with the requirement of Tennessee Rule of Civil Procedure 3 that service be reissued intermittently if not served within 90 days of issuance. *See* Tenn. R. Civ. P. 3. Ms. Urquia relies on the terms of Tennessee Code Annotated section 56-7-1206(d) and claims that her attempt to obtain service on Mr. Neal was sufficient to give her the right to proceed directly against Progressive. We disagree. For the reasons set forth below, we do not believe that the terms of Tennessee Code Annotated section 56-7-1206(d) were triggered by the circumstances of this case and therefore, Ms. Urquia's failure to reissue process against Mr. Neal left her claims time barred.

Notably, the terms of the uninsured motorist statute are not intended to "benefit the insured at the cost of stripping the insurer of its right to recover against the tortfeasor." *Winters*, 932 S.W.2d at 466. Therefore, as we have previously explained, "there can be no legal liability established against an uninsured motorist carrier without first properly commencing a claim against the tortfeasor." *Davis v. Grange Mut. Cas. Grp.*, No. M2016-02239-COA-R3-CV, 2017 WL 4331041, at *3 (Tenn. Ct. App. Sept. 28, 2017) (citing *Winters,* 932 S.W.2d at 465-66). Accordingly, "'if the statute of limitations ha[s] run against the uninsured *motorist*, a direct action [cannot be] maintained against the uninsured motorist *carrier*.'" *Id.* (quoting *Bates v. Greene*, 544 S.W.3d 345, 352 (Tenn. Ct. App. 2017)).

The statute of limitations applicable to Ms. Urquia's claim against Mr. Neal was one year from the date of injury. Tenn. Code Ann. § 28-3-104(a)(1)(A). The trial court found that the accident at issue occurred on June 16, 2022, and that Ms. Urquia timely filed her complaint on November 10, 2022. However, "[t]he filing alone . . . is not sufficient to toll the statute of limitations. Rather a plaintiff must also comply with Rules 3 and 4 of the Tennessee Rules of Civil Procedure." *Davis*, 2017 WL 4331041, at *4. Tennessee Rule of Civil Procedure 3 provides that:

[i]f process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued,

within one year of the filing of the complaint.

Tenn. R. Civ. P. 3. Additionally, Rule 4 provides that:

> [t]he person serving the summons shall promptly make proof of service to the court and shall identify the person served and shall describe the manner of service. If a summons is not served within 90 days after its issuance, it shall be returned stating the reasons for failure to serve. The plaintiff may obtain new summonses from time to time, as provided in Rule 3, if any prior summons has been returned unserved or if any prior summons has not been served within 90 days of issuance.

Tenn. R. Civ. P. 4.03(1). Rule 3, when read in conjunction with Rule 4, "requires service of process" for the proper commencement of a lawsuit. *McNeary v. Baptist Mem'l. Hosp.*, 360 S.W.3d 429, 439 (Tenn. Ct. App. 2011). This Court has "also explained that 'the term "process" in Rule 3 refers to a summons, and the word "summons" in Rule 4 is the process in Rule 3.'" *Id.* at 437 (quoting *Richards v. Newby*, Shelby Law No. 20, 23583, 1991 WL 163541, *3 (Tenn. Ct. App. Aug. 27, 1991)). This Court has further explained that when reading Rules 3 and 4 in conjunction:

> Rule 4 provides ninety days to serve process after its issuance. If process is not served, it must be returned stating the reasons for failure to serve. Rule 3 then requires that the plaintiff reissue process within either one year from the previous issuance, or one year from the filing of the suit if summons was not issued when the suit was filed.

*Id.* However, as stated above, if a summons is returned stamped with the words: "Not to be found in my county," or words to that effect, then "the service of process against the uninsured motorist carrier . . . shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case."[3] *See* Tenn. Code Ann. § 56-7-1206(d). If this subsection is triggered, a plaintiff may "by-pass the T.R.C.P. Rule 3 requirement that new process be issued" within one year from the issuance of the previous process. *Lady*, 747 S.W.2d at 345.

Ms. Urquia does not dispute that she failed to reissue process within the one-year period outlined in Rule 3. Therefore, for her claim against Progressive to survive, the terms of Tennessee Code Annotated section 56-7-1206(d) must have been triggered in order for her to by-pass the requirements of Rule 3. *See Davis*, 2017 WL 4331041 at *6. On appeal,

---

[3] In addition to the return of the service marked "Not to be found," the plaintiff must also properly serve the uninsured motorist carrier in order for the terms of Tennessee Code Annotated section 56-7-1206(d) to apply. *Davis*, 2017 WL 4331041, at *6 (citing *Lady v. Kregger*, 747 S.W.2d 342, 344 (Tenn. Ct. App. 1987)). The parties do not dispute that Progressive was properly served.

the parties do not dispute that the uninsured motorist statute applied. Further, the parties do not dispute that the summons issued to Mr. Neal was returned unserved and stamped: "NOT TO BE FOUND AFTER DILIGENT SEARCH AND INQUIRY." Rather, Ms. Urquia claims that she "was diligent in attempting to timely serve Defendant Neal with process" and that "[w]hen the summons to Defendant Neal was marked [with the statutory language], [she] was in compliance with the requirements of the uninsured motorist statute so that no further effort should have been required by [her] to serve Defendant Neal." Progressive claims that this subsection is inapplicable because the whereabouts of Mr. Neal were known after the attempted service and Ms. Urquia was required to continue to attempt service either through the normal means, through the issuance of alias process pursuant to Tennessee Code Annotated section 56-7-1206(e), or by the method provided for serving a defendant who is avoiding service outlined in Tennessee Rule of Civil Procedure 4.04(1). Notably, Ms. Urquia does not challenge the trial court's factual finding that the process server located Mr. Neal at his residence when attempting to serve the summons.

Ms. Urquia claims that caselaw supports her claim that she "diligently complied with the requirements of Tenn. Code Ann. §56-7-1206(d)" because she attempted to serve the defendant at his residence and the summons was returned with the statutory language affixed. However, she does not address the consequences of Mr. Neal having been located at this address and yet not served.

"The return of an officer is the written statement of what he has done with the process in his hands." *Davis v. Reaves*, 75 Tenn. 585, 590 (1881) (quoting *Hill v. Hinton*, 39 Tenn. (2 Head) 124, 127 (1858)). Notably,

> [t]he Tennessee Supreme Court has held that the language of "not to be found within [the sheriff's] county" "clearly imports that, after diligent inquiry and search, by the sheriff, at the usual residence of the defendant and elsewhere, he is not to be found, being either actually absent from the county, or having concealed himself so as to evade the service of process."

*Caldwell v. Canada Trace, Inc.*, No. W2003-00264-COA-R3-CV, 2004 WL 1459418, at *5 (Tenn. Ct. App. June 28, 2004) (quoting *Welch v. Robinson*, 29 Tenn. (10 Hum.) 264, 266 (1849)). This provides a clear definition for the term "Not to be found in my county." The language of the term itself "implies . . . that the [process server] has been diligent, and done all that could reasonably have been done, or that might yet reasonably be done, to serve the process, and that, with all this, the defendant was not to be found in his county." *Robson v. Hunter*, 16 S.W. 466, 467 (Tenn. 1891). Therefore, the "not to be found in my county" language referenced throughout this opinion is not a superficial set of words which itself conclusively demonstrates that the application of section 1206(d) is proper. Rather, because "not to be found in my county" is a defined term, the statements of the process server must comport with the definition in order for a return to be a "not to be found in my

county" form of return.[4]

Here, the written notations of the process server explicitly contradict the definition of a "not to be found in my county" situation. As our State Supreme Court explained, the term implies that the defendant "'is not to be found, being either actually absent from the county, or having concealed himself so as to evade the service of process.'" *Id.* at 468. (quoting *Welch*, 29 Tenn. at 266). The process server in this case indicated that he or she located Mr. Neal at his last known address and spoke to him. Therefore, Mr. Neal was clearly not absent or concealing himself because he was *found*. Additionally, the trial court specifically found that this evidence demonstrated that "Defendant Neal was found at his residence, he simply refused to accept service and no further attempts were made." We cannot hold that this return has triggered the terms of the statute where the statements of the process server so blatantly contradict the conditions required for the proper use of the "not to be found in my county" stamp. *See Reaves*, 75 Tenn. at 590-92 (holding a sale of land in the administration of a decedent's estate was void for faulty service on the members of the decedent's estate where "the recital in the decree [was] conclusively and clearly contradicted by the record, and it [was] shown to [be] impossible that" the publication of service had run for the required period of four weeks so as to be returned "not to be found" where the return was endorsed less than four weeks prior to date the decree was made); *see also Robson*, 16 S.W. at 469 (noting that the process server's statement that the defendant was not to be found in his county "was not true" as the defendant was merely out of town visiting relatives when service was attempted and therefore, did not authorize a writ of attachment).

The only evidence regarding the attempted service of Mr. Neal comes from the process server's written statements. The process server wrote that Mr. Neal was "avoiding service/*said* he would not cooperate." (*emphasis added*). The process server's notation demonstrates that he or she did not have an adequate basis to conclude that Mr. Neal was not to be found in his or her county because it indicates that Mr. Neal was actually *found*. Importantly, the trial court made a factual finding regarding this issue. The trial court found that Mr. Neal "was found at his residence, he simply refused to accept service and no further attempts were made." The dissent seeks to minimize the importance of this factual finding as well as the effect it has to constrain our review on appeal. While we appreciate the puzzling decision of the process server to mark the return in such a way despite having contacted Mr. Neal, it is not our place to elucidate various scenarios which could have taken place. That is doubly so here, as Ms. Urquia has not challenged the trial

_____

[4] Notably, our Legislature was presumed to know that this was the state of the law when it enacted Tennessee Code Annotated section 56-7-1206(d). *Blankenship v. Est. of Bain*, 5 S.W.3d 647, 651 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997)). Further, "common law is not displaced by a legislative enactment, except to the extent required by the statute itself." *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002). Accordingly, as our Legislature has here made no attempt to redefine the concept of a "not to be found in my county" return, we presume these definitions to remain applicable.

court's finding on appeal or attempted to explain the process server's contradictory notation. Likewise, a hearing was held on the motion for summary judgment, and Ms. Urquia could have sought to submit evidence demonstrating that she had complied with the terms of the statute. Instead, she made only a legal argument akin to that submitted on appeal that "the summons says, has the stamp, not to be found after diligent search and inquiry. And that's what the statute requires." We reiterate that we are required to focus "on the evidence the nonmoving party [has put] forward [ ] at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced" at a future trial. *Rye*, 477 S.W.3d at 265. Likewise, it is not our role to construct a litigant's argument for her. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) (stating "[i]t is not the role of the courts ... to research or construct a litigant's case or arguments, ... and where a party fails to develop an argument in support of [its] contention ..., the issue is waived").

Additionally, we agree with the trial court's conclusion that the existence of Tennessee Code Annotated section 56-7-1206(e) demonstrates the present circumstances do not trigger the terms of Tennessee Code Annotated section 56-7-1206(d). Subsection (e) specifically provides the procedure to be followed when the whereabouts of an uninsured motorist are discovered and permits an alias process to be issued against the motorist. Tenn. Code Ann. § 56-7-1206(e). Further, had Mr. Neal continued to refuse service, Ms. Urquia could have implemented the steps outlined in Tennessee Rule of Civil Procedure 4.04 to effectuate service by other means. She made no attempts to do so. While we are sympathetic to the position Ms. Urquia was placed in by the return bearing such language, we cannot override the function of law. It was her duty to ensure that her attempts at service complied with the statute if she intended to rely upon it. The dissent posits that we are imposing an additional requirement for the triggering of Tennessee Code Annotated section 56-7-1206(d). We neither impose additional requirements on the section, nor do we dispute its function. Rather, we hold only that, in this case, the written statements of the process server constituted sufficient evidence that the return at issue was not a "not to be found in my county return" despite being stamped as one. In effect, we hold that the statute did not create a "rubber stamp" requirement but requires one to pay attention to "the man behind the curtain" where such a blatant contradiction between the return at issue and the defined term of a "not to be found in my county" return exists. THE WIZARD OF OZ (Metro-Goldwyn-Meyer 1939). Because Mr. Neal was found at his residence in Shelby County, the terms of Tennessee Code Annotated section 56-7-1206(d) were not triggered. Therefore, she was not entitled to by-pass the terms of Tennessee Rule of Civil Procedure 3, and the statute of limitations ran as to her claim against Mr. Neal when she failed to reissue service. Accordingly, we affirm the trial court's grant of summary judgment to Progressive.

## V. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court. Costs of this

appeal are taxed to the appellant, Kimberly P. Urquia, for which execution may issue if necessary.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE