IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs January 31, 2011


## MARVIN MCNEARY, ET AL. v. BAPTIST MEMORIAL HOSPITAL , A Tennessee Corporation, ET AL.


Direct Appeal from the Circuit Court for Shelby County
No. CT-003539-05      Karen R. Williams, Judge

---

No. W2009-01231-COA-R3-CV - Filed March 14, 2011

---

This case arises from the grant of a Tennessee Rule of Civil Procedure 12 motion to dismiss, whereby the trial court dismissed one of the party-defendants from this lawsuit for lack of personal jurisdiction. Specifically, the trial court determined that: (1) the Appellants had failed to serve process on the Appellee; (2) that neither the statute of limitations nor the statute of repose operated to save the Appellants' cause of action; and (3) that Appellants were not entitled to Tennessee Rule of Civil Procedure 60 relief on grounds of fraud or misrepresentation. Discerning no error, we affirm and remand for further proceedings.


**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**


J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Duncan E. Ragsdale, Memphis, Tennessee, for the appellants, Marvin L. McNeary and Gwendolyn V. McNeary, for themselves and as next Friend to Kayla J. McNeary.

James T. McColgan, III and Michael T. Goodin, Memphis, Tennessee, for the appellee, J. M. Harmon


**OPINION**


On or about November 11, 1999, Gwendolyn V. McNeary (together with her husband, Marvin L. McNeary, the "McNearys," "Plaintiffs," or "Appellants") went to the Women's Physicians Group, where she was seen by Dr. Dionne M. Rouselle. Mrs. McNeary was pregnant with her daughter Kayla J. McNeary. Dr. Rouselle scheduled delivery for June 25, 1999. On that date, Mrs. McNeary went to Baptist Memorial Hospital East, where she was

seen, evaluated, and placed on an electronic fetal monitor by Debra Houston, R.N., a labor and delivery nurse. In addition to Ms. Houston, Mrs. McNeary was also attended by Bonnie Beasley, R.N., Tuwanna McDaniel, R.N., Regina Lawson, R.N., and J. Ashley Whitaker, R.N., who were the obstetrical nurses on duty that day.

At approximately 11:00 a.m. on June 25, 1999, Certified Registered Nurse Anesthetist ("CRNA") Jeff Harmon inserted an epidural catheter into Mrs. McNeary's back. Jeff Harmon's full name is William Jeffrey Harmon. In the medical records, Mr. Harmon's signature is very difficult to read and appears to be either "J. M." or "Jim" Harmon. This confusion concerning Mr. Harmon's name will be discussed in more detail below, as it relates to allegations of fraud and misrepresentation.

During the administration of the epidural, Mrs. McNeary's blood pressure dropped and she lost consciousness. According to the McNearys' complaint, it took Dr. Rouselle approximately thirty-three minutes to deliver Kayla and, during the entire procedure, Mrs. McNeary's mean arterial pressure was at or below sixty millimeters of mercury. As a result, the McNearys claim that Kayla suffered fetal distress, including absent fetal heart rate, and periods of fetal bradycardia. Consequently, the McNearys assert that Kayla suffered an asphyxial event, which resulted in permanent and irreversible brain damage.

On June 30, 2005, the McNearys, individually and as next friend to Kayla McNeary, filed suit against Baptist Memorial Health Care d/b/a Baptist Memorial Hospital, J.M. Harmon, Debra Houston, Bonnie Beasley, Tuwanna McDaniel, Regina L. Lawson, J. Ashley Whitaker, Dionne Marie Rouselle, and Women's Physicians Group. The complaint alleged negligence on the part of Dr. Rouselle in Kayla's delivery. The McNearys also averred negligence on the part of the nursing staff for failure to properly assess and monitor the fetal heart monitor, and failure to act in a timely manner to provide treatment or to notify Mrs. McNeary's physician. In addition, the McNearys alleged that the treatment provided by Jeff Harmon, CRNA ("Defendant Harmon," or "Appellee"), whom they identify in the complaint as "J. M. Harmon," fell below the recognized standard of care. Specifically, the McNearys contend that J. M. Harmon improperly administered the epidural, thus causing Mrs. McNeary's blood pressure and oxygen levels to drop, thereby denying Kayla oxygen and causing her brain damage. Summonses on the original complaint were issued to all party-defendants on June 30, 2005. According to the server's return, dated June 30, 2005, the summons for Defendant Harmon was not served because J.M. Harmon was not found in the county.[1] It appears that the McNearys reissued process for J.M. Harmon on June 30, 2005

_____

[1] Although it is odd that service on the initial summons was returned unserved on the same day (i.e., June 25, 2005) that it was issued, there is no explanation in the record as to how the process server adduced

(continued...)

(after the original had been returned unserved). However, the server's return is left blank on the back of this summons.

The McNearys were allowed to file an amended complaint on August 18, 2005. The amended complaint adds Vijaya L. Duggirala, an Anesthesia Specialist, and Metropolitan Anesthesia Alliance (together with Baptist Memorial Health Care d/b/a Baptist Memorial Hospital, J. M. Harmon, Debra Houston, Bonnie Beasley, Tuwanna McDaniel, Regina L. Lawson, J. Ashley Whitaker, Dionne Marie Rouselle, and Women's Physicians Group "Defendants"). The amended complaint specifically alleges that J. M. Harmon was employed by Dr. Duggirala and/or Metropolitan Anesthesia Alliance ("MAA") at the time of Kayla McNeary's birth.

On September 16, 2005, before new process was issued on the amended complaint, the trial court entered an order by interchange, stating that all matters were stayed pending a decision by the Supreme Court of Tennessee in *Calaway v. Schucker*, 193 S.W. 509 (Tenn. 2005). However, the September 16, 2005 order specifically stated that all issues pertaining to service of process were expressly excluded from the stay.

On October 21, 2005, a summons was issued for J.M. Harmon on the amended complaint. It is undisputed that the October 21, 2005 summons was never served on Defendant Harmon; rather, the process server's return, dated October 29, 2005, indicates that the summons was "served personally [on] Jennifer Marie Harmon," who is not a party to this suit.[2]

Dr. Duggirala and MAA filed answers on July 21, 2006. In those answers, Dr. Duggirala and MAA admit that MAA was the employer of J.M. Harmon, CRNA, or Jim Harmon, CRNA, on June 25, 1999.[3] On October 5, 2007, the trial court entered an order lifting the stay on proceedings.

On April 22, 2008, the McNearys again issued service of process on Defendant

---

[1](...continued)
that J. M. Harmon was not in the county on the very same day that the summons was issued. Nonetheless, our review is limited to the appellate record, which, in this case, indicates that the initial summons was both issued and returned unserved on June 30, 2005.

[2] As discussed *infra* Defendant Harmon was allegedly not aware of this service on Jennifer Marie Harmon until he was informed of it on November 23, 2009. The allegations of fraud and misrepresentation at issue in this case arise from the service of process on Jennifer Marie Harmon.

[3] On October 13, 2006, the McNearys took a voluntary non-suit as to Dr. Duggirala.

Harmon. The return indicates that Sheriff Mark Lutrell accomplished "personal service [on] J. M. Harmon" on April 30, 2008. Although "J. M. Harmon" is not, in fact, Defendant Harmon, it is undisputed that the April 22, 2008 summons was, in fact, served on the correct Defendant Harmon. According to Defendant Harmon, April 30, 2008, was the first time he was served with the complaint, amended complaint, and previously filed discovery pleadings. Consequently, on May 28, 2008, Defendant Harmon filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12. Specifically, Defendant Harmon alleged that the complaint should be dismissed for:

> ...lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and for failure to state a claim...due to Plaintiffs' failure to secure proper service of process and serve the Amended Complaint on Defendant CRNA Harmon within the time permitted by Rule 3 and 4 of the Tennessee Rules of Civil Procedure. Defendant CRNA Harmon would further assert that this matter is time barred by the three year statute of repose and he should be dismissed with prejudice for the reasons set forth herein.
> CRNA Harmon appears specially to contest process, service, personal jurisdiction, the statute of limitations, and the statute of repose....

On September 24, 2008, the McNearys filed a response in opposition to Defendant Harmon's motion to dismiss, wherein they allege that:

> [T]he action was commenced before December 9, 2005 by the filing of the Complaint and J. M. Harmon was served with [the] Summons and Complaint with[in] the statute of limitations in this case which is June 25, 2018. See *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509 (Tenn. 2005).
> As per *Calaway*...the statute of limitations and statute of repose in T.C.A. 29-26-116 is [sic] tolled until Kayla McNeary's nineteenth birthday, June 25, 2018.

Defendant Harmon's motion to dismiss was heard on October 3, 2008. The trial court orally stated its intention to grant the motion to dismiss based upon its finding that the McNearys had failed to comply with Tennessee Rules of Civil Procedure 3 and 4. However, before an order could be entered, the McNearys moved the court to reconsider, and the court elected to withhold entry of a written order, pending hearing on the motion to reconsider. That hearing was held on January 20, 2009. The proceedings were, however, stayed pending

possible review by the Tennessee Supreme Court in the case of ***Crespo v. McCullough***, No. M2007-02601-COA-R3-CV, 2008 WL 4767060 (Tenn. Ct. App. Oct. 29, 2008). The Tennessee Supreme Court denied the application for permission to appeal the ***Crespo*** case on February 23, 2009. Following that denial, on April 16, 2009, the trial court continued the hearing in the present case. By order of June 5, 2009, the trial court denied the motion to reconsider and, in so doing, granted Defendant Harmon's motion to dismiss. In its June 5, 2009 order, the trial court specifically found that:

> 1. Plaintiffs filed their initial complaint in this matter on June 20, 2005. On that date, service of process was issued as to Defendant Harmon. That process was never served on Defendant Harmon.
>
> 2. Plaintiffs filed an amended complaint on August 18, 2005; however, new process was not reissued at that time regarding Defendant Harmon.
>
> \*      \*      \*
>
> 5. Service of process for CRNA Harmon was returned "incomplete" on October 21, 2005, and Plaintiffs reissued service of process on that date. This process like that initially issued was never served on Defendant Harmon.
>
> \*      \*      \*
>
> 7. On April 22, 2008, Plaintiffs reissued service of process for Defendant Harmon [this was after the ***Calaway*** stay was lifted, *see* discussion *supra*].
>
> 8. On April 30, 2008, more than two years after the previously issued process was not served, Plaintiffs served CRNA Harmon with process issued on April 22, 2008, along with a copy of the complaint, amended complaint, and other previously filed discovery pleadings.

Based upon the forgoing findings of fact, the trial court held that:

> 1. Plaintiffs' cause of action as to Defendant CRNA Harmon was not commenced properly on June 20, 2005 due to Plaintiffs'

failure to comply with the mandates of Rules 3 and 4 of the Tennessee Rules of Civil Procedure.

2. Plaintiffs' failure to comply with Rules 3 and 4 of the Tennessee Rules of Civil Procedure rendered the June 25, 2005 and October 21, 2005 service of process ineffective and insufficient. The stay of proceedings entered on September 16, 2005 excluded any matters pertaining to issuance and completion of proper service of process pursuant to Rules 3 and 4 of the Tennessee Rules of Civil Procedure.

3. Plaintiffs' action should be dismissed with prejudice as to Defendant CRNA Harmon due to failure to reissue summons and serve process as required by Rules 3 and 4 of the Tennessee Rules of Civil Procedure.

4. Plaintiffs cannot rely on the holding in Calaway v. Schucker, 193 S.W. 3d 509 (Tenn. 2005) to assert that the action was commenced on or before December 9, 2005, when Plaintiffs failed to reissue summons and serve process in compliance with Rules 3 and 4 of the Tennessee Rules of Civil Procedure....

5. Due to Plaintiffs' failure to have process properly issued and served, this court is without personal jurisdiction of Defendant Harmon.

The McNearys filed a motion for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 9, which motion was granted by the trial court's order of June 5, 2009. On June 10, 2009, the McNearys filed their application for interlocutory appeal with this Court. By Order of July 1, 2009, this Court denied the Rule 9 appeal.

On September 25, 2009, the trial court entered an order, reiterating its findings as set out in the June 5, 2009 order, *supra*. This order also includes Tennessee Rule of Civil Procedure 54.02 language, thus making the judgment as to Defendant Harmon final and appealable. The appellate record was filed on October 20, 2009. According to the McNearys' brief, and as briefly noted in fn. 2, counsel for Defendant Harmon stated, at a November 23, 2009 meeting, that Defendant Harmon had not been aware, prior to the meeting, that process had been served on Jennifer Marie Harmon on October 29, 2005. At this time, the McNearys' attorney, Duncan Ragsdale, accused Defendant Harmon's counsel of fraud and misrepresentation. These allegations were based on the fact that the answers

filed by Dr. Duggirala and MAA admitted that "J. M." or "Jim" Harmon was an MAA employee on June 25, 1999. The McNearys assert that these answers led them to believe that service on Jennifer Marie Harmon was service on the proper defendant in this case. Mr. Ragsdale further alleged that he was not informed that he did not have proper service on Defendant Harmon until April of 2008. We note that no answer was filed by Defendant Harmon, nor did the McNearys seek default judgment based on the lack of responsive pleadings resulting from the alleged service of process on October 29, 2005. Nonetheless, based upon the foregoing allegations of fraud and misrepresentation, on November 25, 2009, the McNearys filed a Tennessee Rule of Civil Procedure 60.02 motion for relief from judgment in the trial court. The McNearys also asked this Court to remand the matter for hearing on the Rule 60.02 motion, which we did. Following that hearing, on June 21, 2010, the trial court entered an order denying the McNearys' request for Rule 60.02 relief. The McNearys appeal, and raise eleven issues for review, which we more succinctly state as follows:

> 1. Whether the trial court erred in dismissing the McNearys' complaint against Defendant Harmon for lack of personal jurisdiction, based upon the trial court's finding that the McNearys had failed to properly issue or serve process.
>
> 2. Whether the three year statute of repose applicable to medical malpractice should bar the McNearys' claim when the claim was not commenced before December 9, 2005, and was filed more than three years after the date of the injury.
>
> 3. Whether the trial court abused its discretion in denying the McNearys' Tennessee Rule of Civil Procedure 60.02 motion for relief from judgment and/or in declining to award sanctions upon remand.
>
> 4. Whether judicial estoppel is applicable to the instant case.

Before reaching the issues, we first note that this case was decided as a Tennessee Rule of Civil Procedure 12 motion to dismiss; however, as discussed above, the trial court obviously considered matters outside the pleadings. Tennessee Rule of Civil Procedure 12.03 provides that: "[i]f, on a motion [to dismiss], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, the Tennessee Supreme Court has previously held that this general rule is inapplicable when the motion is

-7-

one involving jurisdictional issues. *See **Nicholstone Book Bindery, Inc. v. Chelsea House Publishers***, 621 S.W.2d 560, 561 n. 1 (Tenn. 1981) (finding that the trial court committed harmless error in treating the defendant's motion to dismiss for lack of personal jurisdiction as one for summary judgment). Although neither party raises this as an issue, under the *Nicholstone* holding, the trial court correctly treated this as a motion to dismiss. It is well settled that a Tenn. R. Civ. P. 12.02 motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See **Riggs v. Burson***, 941 S.W.2d 44 (Tenn. 1997). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See **Wolcotts Fin. Serv., Inc. v. McReynolds***, 807 S.W.2d 708 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See **Cornpropst v. Sloan***, 528 S.W.2d 188 (Tenn. 1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See **Cook by and through Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934 (Tenn. 1994).

## I. Personal Jurisdiction

The Tennessee Rules of Civil Procedure authorize dismissal of all or part of a complaint based upon the defenses of lack of jurisdiction over the parties, insufficiency of process, and insufficiency of service of process. Tenn. R. Civ. P. 12.02(2), 12.02(4) and 12.02(5). A court acquires personal jurisdiction over a defendant when the defendant is served with process. *See **Kane v. Kane***, 547 S.W.2d 559, 560 (Tenn. 1977); *accord **Miss. Publ'g Corp. v. Murphree***, 326 U.S. 438, 444-45, 66 S.Ct. 242, 90 L.Ed. 185 (1946).

Tennessee Rule of Civil Procedure 3 outlines the requirements for commencing a lawsuit by timely filing a complaint and issuing process:

> All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous

process or, if no process is issued, within one year of the filing of the complaint.

Tennessee Rule of Civil Procedure 4 sets forth the requirements necessary to effect proper service of process, as is relevant to the instant appeal, Rule 4.03(1) provides:

> The person serving the summons shall promptly make proof of service to the court and shall identify the person served and shall describe the manner of service. If a summons is not served within 90 days after its issuance, it shall be returned stating the reasons for failure to serve. The plaintiff may obtain new summonses from time to time, as provided in Rule 3, if any prior summons has been returned unserved or if any prior summons has not been served within 90 days of issuance.

This Court has recognized that Tennessee Rules of Civil Procedure 3 and 4 should be read together. *Richards v. Newby*, Shelby Law No. 20, 23583, 1991 WL 163541, \*3 (Tenn. Ct. App. Aug. 27, 1991). In *Richards*, we also explained that "the term 'process' in Rule 3 refers to a summons, and the word 'summons' in Rule 4 is the process in Rule 3." *Id*. Reading Rules 3 and 4 together, Rule 4 provides ninety days to serve process after its issuance. If process is not served, it must be returned stating the reasons for failure to serve. Rule 3 then requires that the plaintiff reissue process within either one year from the previous issuance, or one year from the filing of the suit if summons was not issued when the suit was filed.

The question of when an action commences was also discussed in 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice, § 1:21 (2011 ed.):

> As a general rule, civil actions in circuit court are commenced by filing a complaint with the clerk of the circuit court, regardless of whether process has been issued, served, or returned. If, however, process remains unissued for [90] days or is not served within [90] days from issuance, regardless of the reason,[4] the plaintiff cannot rely upon the original

---

[4] Mr. Pivnick incorrectly states that process must be issued within 30 days of the filing of the complaint, or otherwise served within 30 days of the issuance of process. As set out above, Tennessee Rules of Civil Procedure 3 and 4 allow 90 days for issuance of process after filing the complaint, and require that process must be served no later than 90 days after issuance. We have corrected this error in the Pivnick

(continued...)

commencement to toll the running of the statute of limitations unless the plaintiff continues the action by obtaining the issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

While commencement of an action is not dependent upon whether process is issued, served, or returned, the Rules provide that a summons will forthwith issue for service upon the filing of a complaint.

*Id*. (footnotes omitted).

The record in this case reveals that the initial summons was issued on June 25, 2005, but was never served on Defendant Harmon. The second summons, issued on October 21, 2005, was served on Jennifer Marie Harmon on October 29, 2005, but was not served on Defendant Harmon. More than two years then passed from the filing of the second summons on October 21, 2005 to the date that the McNearys issued process a third time on April 22, 2008. Following issuance of the third summons, the McNearys achieved service of process on Defendant Harmon on April 30, 2008, nearly three years from the date of the initial filing of the suit, and over two years after the issuance of the second summons. Based upon these facts, and specifically due to the impermissible delay in reissuing and serving process on Defendant Harmon, the trial court determined that service on Defendant Harmon was not valid. Consequently, the trial court dismissed Defendant Harmon from the suit based upon a lack of personal jurisdiction.

In their brief, the McNearys assert that Kayla McNeary's status as a minor negates the requirements of Tennessee Rules of Civil Procedure 3 and 4. The McNearys provide no case law to support this assertion, nor do we find any such law in our research. Additionally, the plain language of Tennessee Rules of Civil Procedure 3 and 4, *supra*, contains no provision to indicate that a minor does not have to comply with the mandates contained therein. Consequently, Kayla McNeary's status as a minor is irrelevant to the question of proper issuance and service of process.

The McNearys also argue that "the provisions of Rule 4.01(3) do not apply because there was no intentional delay in the issuance of service of Summons." This rule provides:

(3) If a plaintiff or counsel for plaintiff (including third-party

---

[4](...continued)
quote.

plaintiffs) intentionally causes delay of prompt issuance of a summons or prompt service of a summons, filing of the complaint (or third-party complaint) is ineffective.

Tenn. R. Civ. P. 4.01(3). The McNearys contend that Rule 4.01(3) imposes a requirement that the trial court find an intentional delay in issuing service before it can dismiss a case for lack of personal jurisdiction. However, the Defendants in this case have never asserted that the McNearys intentionally delayed issuing summons. Rule 4.01(3) was not enacted until 2004. At no time before or after its enactment was a plaintiff entitled to disregard the requirements of Tennessee Rules of Civil Procedure 3 and 4 in obtaining service of process.

Here, the trial court specifically determined that the case as to Defendant Harmon should be dismissed because of the McNearys' failure to comply with Tennessee Rules of Civil Procedure 3 and 4. The court's decision was not based upon intentional delay under Rule 4.01(3). Accordingly, the McNearys' argument, insofar as it rests upon Rule 4.01(3), is irrelevant.

Based upon the record, we can only conclude that the McNearys failed to properly issue and serve process on Defendant Harmon in compliance with the Tennessee Rules of Civil Procedure. Specifically, service of process was not served within ninety days from the initial filing date of the complaint as required under Tennessee Rule of Civil Procedure 3. Furthermore, the McNearys failed to obtain issuance of new process within one year of the filing of the complaint or amended complaint. Due to the McNearys' failure to comply with Rules 3 and 4, the trial court correctly determined that it did not have personal jurisdiction over Defendant Harmon.

## II. Statute of Repose

The injury at issue in this case occurred on June 25, 1999. As set out above, the trial court specifically held that the McNearys could not rely upon the *Calaway v. Schucker*, 193 S.W.3d 509 (Tenn. 2005) exception to toll the statute of repose because the case had not been properly commenced against Defendant Harmon.

In *Calaway*, our Supreme Court addressed the question of whether the time for filing a medical malpractice claim was controlled by Tennessee Code Annotated §28-1-106, which tolls the statute of limitations based on the incapacity of minority, or Tennessee Code Annotated § 29-26-116(a)(3), which establishes a three year statute of repose for all medical malpractice claims. The Court held that "the plaintiff's minority does not toll the medical malpractice statute of repose." *Id*. at 517. In so holding, the Court emphasized that "[t]o accept that the legal disability statute trumps the medical malpractice statute of repose 'would

be to defeat the very purposes behind the enactment' of the latter." *Id*. (citing *Penley v. Honda*, 31 S.W. 3d 181 (Tenn. 2000)). Under the *Calaway* holding, if more than three years pass from the date of the alleged injury, then the medical malpractice action is barred by the statute of repose regardless of whether a minor was the injured party.

The *Calaway* Court recognized that its holding overruled prior precedent that allowed a plaintiff's minority to toll the statute of repose. *See, e.g., Braden v. Yoder*, 592 S.W.2d 896 (Tenn. Ct. App. 1979); *Bowers v. Hammond*, 954 S.W.2d 752 (Tenn. Ct. App. 1997). In order to avoid undue hardship to potential plaintiffs who had relied upon earlier precedent, the *Calaway* Court held that "for cases commenced on or before December 9, 2005, we hold that the plaintiff's minority tolls the medical malpractice statute of repose. For cases commenced after December 9, 2005, we hold that the plaintiff's minority does not toll the medical malpractice statute of repose." *Calaway*, 193 S.W.3d at 518.

Based upon the *Calaway* exception, the McNearys' assert, both at trial level and on appeal, that: (1) the statute of repose is tolled in this case because the complaint was filed before December 9, 2005; (2) the statute of limitations is tolled until June 25, 2018, which is one year after Kayla McNeary turns eighteen; (3) the April 30, 2008 service of process on Defendant Harmon was timely because both the statute of limitations and statute of repose were tolled.

Tennessee Rule of Civil Procedure 3 states, in relevant part, that "[a]ll civil actions are commenced by filing a complaint with the clerk of the court." Based upon Rule 3, the McNearys assert that the present action was commenced when the original complaint was filed on June 30, 2005; thus, under *Calaway*, the McNearys contend that Kayla's minority should toll the medical malpractice statute of repose. We respectfully disagree.

Standing alone, Tennessee Rule of Civil Procedure 3 could be construed to mean that filing a complaint alone is sufficient to commence an action. However, this construction overlooks the application of Tennessee Rules of Civil Procedure 3 and 4, which also requires service of process. Tennessee law is clear that commencement of an action is accomplished only when a complaint is filed and process is served. In *Cline v. Lazy Eights Flight Center*, Shelby Law No. 68, 1989 WL 155936 (Tenn. Ct. App., Dec. 27, 1989), this Court specifically addressed the question of when an action is commenced. In *Cline*, the plaintiff filed suit, failed to issue summons, and then took a voluntary non-suit more than a year after the complaint was filed. *Id*. at *1. Relying upon the saving statute, the plaintiff then attempted to re-file the action. *Id*. We held that the plaintiff could not rely on the saving statute, and noted that "while the filing of a complaint is the commencement of the action, it is contemplated that the filing of the complaint will bring forth the issuance of a summons." *Id*. at *4. In affirming the trial court's dismissal of plaintiff's case, we

recognized that the Tennessee Rules of Civil Procedure contain "no express provision to govern the situation," but explained that "the plaintiff cannot sit idly by" and fail to comply with Rules 3 and 4. *Id*.

In the more recent case of *Frye v. Blue Ridge Neuroscience Center*, 70 S.W.3d 710 (Tenn. 2002), the Tennessee Supreme Court held that reliance upon the saving statute is dependent upon plaintiff's strict compliance with Tennessee Rule of Civil Procedure 3 in procuring proper service of process. Although the *Frye* case turns on the applicable statute of limitations (as opposed to the statute of repose, which is at issue in the instant appeal), we conclude that the underlying holding in *Frye* provides guidance in this case. The *Frye* Court held that the initial date of filing cannot be used to toll the statute of limitations when service is not completed pursuant to Rules 3 and 4 of the Tennessee Rules of Civil Procedure. *Id*. at 717. The Court specifically opined that:

> If the plaintiff is to have the benefit of the one-year tolling period of the saving statute, Tennessee Code Annotated section 28-1-105(a) requires first that the plaintiff must have 'commenced [the action] within the time limited by a rule or statute of limitation.' Thus, availability of the saving statute is dependent upon a plaintiff's compliance with Rule 3.

*Id*. at 716 (citing Tenn. Code Ann. § 28-1-105(a)). The Supreme Court's holding in *Frye* is consistent with this Court's decision in *Cline* as both cases require a plaintiff to not only file his or her complaint, but also require that plaintiff to comply with the mandates of Tennessee Rules of Civil Procedure 3 and 4 in order to "commence" his or her action.

In compliance with the foregoing precedents, we conclude that the McNearys' case against Defendant Harmon was not commenced with the initial filing of the lawsuit because, as discussed above, the McNearys failed to comply with Tennessee Rules of Civil Procedure 3 and 4 in obtaining service of the complaint. In *Calaway*, the Tennessee Supreme Court allowed a tolling of the statute of repose only in those cases that were commenced before December 9, 2005. Because the McNearys failed to comply with Rules 3 and 4, they cannot rely upon either the original filing date of June 30, 2005, or the filing date of the amended complaint, October 21, 2005, in this matter. Because this action did not, in fact, commence before December 9, 2005, and because more than three years have passed since the date of the injuries alleged, the statute of repose bars the McNearys' claims against Defendant Harmon.

The McNearys further argue that the issuance of a summons is not a prerequisite for the tolling of the statute of limitations in the case of a minor. As correctly pointed out in

Defendant Harmon's brief, the McNearys' assertion overlooks the fact that the statute of repose, not the statute of limitations, requires dismissal of this case. As discussed in detail above, our Supreme Court has clearly established, in *Calaway*, that the three year statute of repose limits the time period in which a plaintiff may file a medical malpractice claim, even if that plaintiff is a minor. *Calaway*, 193 S.W.3d at 517. Consequently, in the present case, the statute of limitations is irrelevant because the three year statute of repose limits the time for filing this cause of action. *Calaway* clearly establishes that the plaintiff's minority does not toll the medical malpractice statute of repose for any case commenced after December 9, 2005. As discussed above, the McNearys' medical malpractice case against Defendant Harmon was never commenced, and is consequently barred by the statute of repose. *Frye*, 70 S.W.3d 716-17. The issue of the tolling of the statute of limitations is, therefore, irrelevant.

### III.  Motion for Relief from Judgment

Tennessee Rule of Civil Procedure 60.02 provides, in relevant part, that:

> On motion and upon such terms as are just, the court may relieve a party... from a final judgment, order or proceeding for the following reasons... (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

The general purpose of Rule 60.02 is "'to alleviate the effect of an oppressive or onerous final judgment.'" *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992)). Rule 60.02 is equally aimed at striking a "proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Thus, relief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991). Instead, relief is appropriate only in those relatively few instances that meet the criteria of the rule. *Id*.

Rule 60.02 has been described as an "escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). Out of respect for the finality afforded to legal proceedings, this "'escape valve' should not be easily opened." *Toney,* 810 S.W.2d at 146. Accordingly, a party seeking relief from a judgment under Rule 60.02 bears the burden of proving that it is entitled to relief by clear and convincing evidence. *McCracken v. Brentwood United Methodist Church*, 958

S.W.2d 792, 795 (Tenn. Ct. App. 1997). Evidence is clear and convincing when it leaves "'no serious or substantial doubt about the correctness of the conclusions drawn.'" ***Goff v. Elmo Greer & Sons Constr. Co.***, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)). "In other words, the evidence must be such that the truth of the facts asserted be 'highly probable.'" ***Goff***, 297 S.W.3d at 187 (quoting ***Teter v. Republic Parking Sys., Inc.***, 181 S.W.3d 330, 341 (Tenn. 2005)).

Tennessee law is clear that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge. ***Underwood v. Zurich Ins. Co.***, 854 S.W.2d 94, 97 (Tenn. 1993); ***Banks v. Dement Constr. Co.***, 817 S.W.2d 16, 18 (Tenn. 1991); ***McCracken*** 958 S.W.2d at 795. The standard of review on appeal is whether the trial court abused its discretion in granting or denying relief. This deferential standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," and thus "envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010). In ***Lee Medical***, Justice Koch succinctly stated this Court's role when asked to review a question involving the trial court's discretion:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below... or to substitute their discretion for the lower court's, The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.
>
> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Medical*, 312 S.W.3d at 524-25 (citations omitted).

In this case the McNearys assert that certain statements made in filings to the trial court were, in fact, misrepresentations upon which the McNearys relied to their detriment. Specifically, the McNearys cite at least six statements made by Defendants' attorneys and/or Dr. Duggirala, which allegedly constitute fraud. Before addressing the specific statements, we first note that attorneys James T. McColgan, III and Stephanie C. Williams represented both Defendant Harmon and Defendant Duggirala at the trial level. Although none of the allegedly fraudulent statements were made by Defendant Harmon, the McNearys rely upon the fact that Defendant Harmon's attorneys allowed certain filings to be made allegedly knowing that they were false. These filings include Dr. Duggirala's answer to the amended complaint, in which Dr. Duggirala states:

> 33. Dr. Duggirala admits that Anesthesia Specialists of Tennessee, P.C. and Metropolitan Anesthesia Alliance, P.L.L.C. were the employers of J. M. Harmon, C.R.N.A., or Jim Harmon, C.R.N.A. Dr. Duggirala denies that she was an employer of J.M. Harmon, C.R.N.A., or Jim Harmon, C.R.N.A.

In addition, in their memorandum in support of the motion for summary judgment, Defendants' attorney states:

> On June 25, 1999, Gwendolyn McNeary was admitted to Baptist Memorial Hospital for a scheduled cesarean section to be performed by Dr. Dionne Marie Rouselle.... For that procedure, C.R.N.A. J. M. Harmon, then employed by Anesthesia

Specialists of Tennessee, was the assigned nurse anesthetist.[5]

Dr. Duggirala further states, in her affidavit, that:

> Based on a review of the medical records for Plaintiff, Gwendolyn V. McNeary and my personal knowledge, I did not supervise J. M. Harmon, C.R.N.A. administer anesthesia to...Gwendolyn V. McNeary on June 25, 1999...nor was it my duty to do so.

The McNearys argue that these and similar statements in the record are false. The deposition testimony of William Jeffrey Harmon (the real party in interest) establishes that it was William Jeffrey Harmon who provided anesthesia to Mrs. McNeary on June 25, 1999. Consequently, the McNearys assert that J. M. Harmon, C.R.N.A. and Jim Harmon are non-entities, and that no person by the name of J.M. Harmon or Jim Harmon administered anesthesia to Mrs. McNeary on June 25, 1999. Therefore, the McNearys assert that the statements and representations made to the court, by Defendant Harmon's attorneys, that J. M. Harmon, or Jim Harmon administered Mrs. McNeary's anesthesia are false and misleading. The McNearys contend that these false statements were made knowingly, or were made without regard to their veracity. The McNearys argue that they justifiably relied upon these assertions when they served Jennifer Marie Harmon, R.N., and failed to issue an alias summons for Defendant Harmon.

The elements of positive fraud are that: (1) the representation must have been made as to an existing fact, which is false and material; (2) knowledge of the falsity (i.e., it was made knowingly or without belief in its truth, or recklessly without regard to whether it is true or false); and (3) the party asserting fraud must have reasonably relied upon the representation to his or her detriment. *See,* ***Black v. Black***, 166 S.W.3d 699, 705 (Tenn. 2005) (quoting ***Brown v. Birman Managed Care, Inc.***, 42 S.W.3d 62, 66–67 (Tenn. 2001)). A motion to set aside a judgment for fraud under section 2 of Rule 60.02 may be based on intrinsic or extrinsic fraud. ***Whitaker v. Whirlpool Corp***., 32 S.W.3d 222, 229-30 (Tenn. Ct. App. 2000).[6] Here, the McNearys allege intrinsic fraud. Intrinsic fraud occurs "within the

---

[5] We are cognizant of the fact that arguments of counsel, and memoranda of law are not evidence; however, the statements made by counsel in their memorandum of law are not offered for the proof contained therein. Rather, the McNearys' cite the argument of counsel for the proposition that the statements contained therein were misrepresentations, which require relief under Rule 60.02.

[6] We note that an independent action to set aside a judgment under the savings provision of Rule 60.02 requires extrinsic fraud. ***Whitaker***, 32 S.W.3d at 230; *see also* ***New York Life Ins. Co. v. Nashville***

(continued...)

-17-

subject matter of the litigation," and includes such things as falsified evidence, forged documents, or perjured testimony. ***Whitaker***, 32 S.W.3d at 230. We are cognizant of the fact that we are reviewing the question of whether the trial court erred in denying Rule 60 relief based upon allegations of fraud on the part of Defendants' attorneys. Although the court does not specifically state its reasons for denying the McNearys relief, from our review of the record, it appears that the trial court's decision was based upon its conclusion that there was no fraud perpetrated by the Defendants. Consequently, we review the record to determine whether the trial court's conclusion was contrary to the evidence, or was otherwise based upon an incorrect application of the relevant law.

Turning to the record, Defendant Harmon denies that his attorneys misrepresented the facts in this case. Defendant Harmon asserts that MAA and Dr. Duggirala's admission that J. M. Harmon was an employee of MAA was based upon their good-faith belief that J.M. Harmon was, in fact, the CRNA that treated Mrs. McNeary. Specifically, counsel for MAA and Dr. Duggirala were aware that Jeff Harmon, CRNA administered Mrs. McNeary's anesthesia. The record indicates that William Jeffrey Harmon's name tag at MAA read "Jeff Harmon." Dr. Duggirala and employees of MAA assert that they believed that Defendant Harmon's first name was "Jeff." The initials "J.M.," therefore, appeared to be correct. Defendant Harmon asserts that counsel for MAA did not become aware that Defendant Harmon's middle name was Jeffrey (which would make the initials "J.M." incorrect) until after the pleadings at issue had been filed. Moreover, counsel for MAA and Dr. Duggirala allege that they were not made aware that the McNearys had obtained service of process on Jennifer Marie Harmon until November 23, 2009, when the McNearys' lawyer accused them of misrepresentation. Consequently, Defendant Harmon contends that no misrepresentation or fraud could have been perpetrated because counsel for Defendants did not know that the McNearys had served a "J.M. Harmon." With no knowledge that Jennifer Marie Harmon had been served, there could be no active deceit on the part of the Defendants. Rather, Defendant Harmon argues that the disputed pleadings were only an attempt to admit that MAA employed the CRNA who provided treatment to Mrs. McNeary.

From our review, at the time that the foregoing pleadings were filed, MAA and Dr.

---

[6](...continued)
***Trust Co.***, 200 Tenn. 513, 292 S.W.2d 749, 751-53 (1956) (holding that an independent action to set aside judgment requires extrinsic fraud). Extrinsic fraud "involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." ***Nobes v. Earhart***, 769 S.W.2d 868, 874 (Tenn. Ct. App.1988). Examples of extrinsic fraud have included keeping a party from filing a lawsuit by falsely promising a compromise, keeping a party from knowing about a lawsuit, and an attorney's claiming to represent a party while acting in a manner opposed to the party. *See **id***.

Duggirala stood to gain no tactical advantage by concealing the identity of Defendant Harmon. In fact, counsel for MAA and Dr. Duggirala was not retained until sometime in May of 2008. Before that time, counsel for Defendants MAA and Dr. Duggirala neither knew, nor had reason to believe, that he would later represent Defendant Harmon.

Perhaps more persuasive is the Affidavit of Jennifer Marie Harmon. Therein, Ms. Harmon states that she was served on October 29, 2005. Thereafter, Ms. Harmon states that she informed the McNearys' attorney that she was not the J.M. Harmon who provided care and treatment to Mrs. McNeary, and that she was not a proper defendant in this case. Ms. Harmon's affidavit further states that the McNearys' attorney instructed Ms. Harmon to mail back the Summons and Complaint, which she did. These statements are undisputed. Consequently, it appears that, following Ms. Harmon's call to the McNearys' attorney, the McNearys were on notice that she was not the proper defendant.

Moreover, the record reveals that the McNearys were aware that the CRNA who treated Mrs. McNeary was male. At her deposition, Mrs. McNeary affirmatively stated that the CRNA at issue was a man. In their brief to this Court, the McNearys repeatedly refer to service of process on "J. M. Harmon" on October 29, 2005; however, as discussed above, this service was on Jennifer Marie Harmon not William Jeffrey Harmon. There is no dispute that Jennifer Marie Harmon is female. With knowledge that the CRNA was male, the McNearys, and their lawyer, should have known that service on the female Jennifer Marie Harmon was incorrect.

From our review of the entire record, we conclude that the McNearys have failed to carry their burden to show, by clear and convincing evidence, that Defendant Harmon or his lawyer perpetrated a fraud upon the McNearys, or otherwise deceived them on the issue of proper service of process. As discussed above, the McNearys accusations are not supported by the evidence in record. Furthermore, the McNearys have failed to show that they detrimentally relied upon the alleged misrepresentations. To the contrary, the events and facts of this case indicate that the McNearys' attorney was aware, or should have been aware, that the October 29, 2005 service on Jennifer Marie Harmon was not effective. Having determined that the trial court did not err in denying the McNearys' Rule 60 relief, any argument concerning Tennessee Rule of Civil Procedure 11 sanctions against Defendant Harmon, or his lawyer, is rendered moot.

## IV. Judicial Estoppel

On appeal, the McNearys have requested that Defendants Dr. Duggirala, MAA, and Jeff Harmon be estopped from denying certain facts. It appears that this issue is not properly before this Court. The issue of estoppel was not raised until after the entry of the final order

of dismissal in this case, and the trial court never considered the issue of estoppel. It is well-settled that issues not raised at the trial court level cannot be raised for the first time on appeal. ***Lawrence v. Stanford***, 655 S.W.2d 927 (Tenn. 1983) Accordingly, this issue cannot be addressed by this Court.

## V. Correctness of the Final Judgment

The McNearys cite several statements from the Order of Final Judgment and argue that these statements are incorrect. However, upon further review of the specific arguments made in the Appellants' brief, it is clear that the allegations of error in the trial court's final order are simply restatements of the issues previously raised by the McNearys. We have addressed those issues in detail above, and so decline to extend the length of this Opinion to reiterate our previous conclusions.

For the foregoing reasons, we affirm the order of the trial court, dismissing Defendant Harmon from the lawsuit, and remand for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellants, Marvin L. McNeary and Gwendolyn McNeary, and their surety.

_____
J. STEVEN STAFFORD, JUDGE