# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 19, 2013 Session

## ANTONIUS HARRIS, ET AL. V. TENNESSEE REHABILITATIVE INITIATIVE IN CORRECTION

### Appeal from the Chancery Court for Davidson County
#### No. 12520III     Ellen H. Lyle, Judge

### No. M2013-00501-COA-R3-CV - Filed April 30, 2014

Four men who worked for Tennessee Rehabilitative Initiative in Correction (TRICOR) while incarcerated in the Department of Corrections filed a grievance with the Department, contending that TRICOR had failed to pay them all the wages they had been promised. The Grievance Committee ruled in their favor, but TRICOR and the Department refused to authorize any additional pay. The men filed two different actions in the Davidson County Chancery Court. This appeal is from the denial of the trial court in Part III of a motion to reconsider. The trial court denied the motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Steven Calvin Compton, Nolensville, Tennessee, for the appellants, Antonius Harris, Timothy Bowles, Robert Payne, and Randy Mills.

Pamela S. Lorch, Nashville, Tennessee, for the appellee, Tennessee Rehabilitative Initiative in Correction.

## OPINION

### I. INTERRELATED CASES

This appeal is from one of two actions brought in the Chancery Court of Davidson County by four inmates in the custody of the Tennessee Department of Correction in an attempt to enforce an oral agreement regarding their jobs and pay. Their workplace in Riverbend Maximum Security Institution (RMSI) is operated by the Tennessee Rehabilitative Initiative in Correction (TRICOR).

TRICOR was created by an act of the legislature, codified at Tenn. Code Ann. § 41-22-401 *et seq*., and is governed by a Board of Directors whose members are appointed by the Governor. "The Tennessee Rehabilitative Initiative in Correction Board . . . is the state agency charged with the responsibility to manage and operate Tennessee's prison industry program. It is affiliated with the Department of Correction for administrative purposes." *McKeon v. State*, 1997 WL 13755, at *1 (Tenn. Ct. App. Jan. 16, 1997).

The four inmates ("Plaintiffs") worked in the print shop located in RMSI and were paid $1.50 an hour on average for their work. In July of 2009, a TRICOR supervisor asked them if they would be willing to start a document imaging service at RMSI. They were advised that if they agreed, their rate of pay would be reduced to $1.00 an hour to start, but that after three months an incentive productivity pay plan would be put into effect, similar to the plan they had in the print shop, which would eventually result in a wage of $1.50 an hour.

Plaintiffs agreed to those terms and began in their new positions at the end of August. They successfully helped TRICOR establish the document imaging service. According to their account, Plaintiffs performed a volume of document work in six months that their supervisors had anticipated would take them twelve months to perform.

Three months after beginning their new assignment, Plaintiffs asked their supervisor about the incentive plan, and he in turn contacted his supervisor. Although the two supervisors submitted an incentive plan proposal, and apparently advocated on behalf of Plaintiffs, it was not put into effect. Finally, on or about June 15, 2010, TRICOR posted a revised policy that was declared to be retroactively effective to February 15, 2010. The new policy stated that there would be no incentive pay for document imaging, and that Plaintiffs would have to work in document imaging for two years before their pay could be raised to $1.25 per hour.

2

Plaintiffs responded by filing an inmate grievance with the Tennessee Department of Correction (TDOC). The grievance was heard by a Grievance Committee, composed of three TDOC officials and two inmates. *See* TDOC Administrative Policies and Procedures Index #501.01. After conducting an investigation and hearing into the matter, the Committee unanimously ruled that Plaintiffs were entitled to the relief they sought.

The conclusions of a TDOC Grievance Committee are not binding until they are approved by higher authorities. According to Plaintiffs' account, there was some confusion between TDOC and TRICOR as to which was entitled to have the final say over their claim, with each contending that the other was the responsible entity. In any case, the grievance was submitted to officials of both TDOC and TRICOR. In the end, Plaintiffs were denied any relief after both the Warden at RMSI and the TDOC Commissioner refused to ratify the conclusions of the Grievance Committee.

## II. THE PROCEEDINGS IN CHANCERY COURT PART II

On December 27, 2011, Plaintiffs filed a Petition for Writ of Certiorari, which was assigned to Part II of the Chancery Court of Davidson County, naming both TRICOR and TDOC as respondents. They recited the above facts and attached the relevant documents. They asked the court to issue the writ and provide them with a full hearing, or in the alternative, to order TRICOR to increase their pay to at least $1.25 an hour and award them back pay, on the basis of the written record.

On March 26, 2012, Plaintiffs filed their First Amended Petition for Writ of Certiorari, adding to their original petition claims for breach of contract, promissory estoppel and conversion, and a request for an award of $3,000. The respondents filed a motion to dismiss. The trial court conducted a hearing, and on August 2, 2012, it granted the motion to dismiss.

The court ruled that Plaintiffs could not obtain damages from respondents, "as they are State agencies and enjoy sovereign immunity from suit for money damages."[1] No appeal was taken from this final order. However, almost three months later, Plaintiffs filed a Rule 60.02 motion for relief from judgment, asserting that the trial court had erred in its sovereign immunity ruling. The trial court denied the motion by an order entered on October 11, 2012.

---

[1]The court also dismissed the complaint because it attempted to combine a petition for certiorari, which is an action in the nature of an appeal, with an original civil action for damages, because those claims require different modes of review and different remedies. *See State ex rel Byram v. City of Brentwood*, 833 S.W.2d 500, 502 (Tenn. Ct. App. 1991); *Goodwin v. Metropolitan Board of Health*, 656 S.W.2d 383, 386-87 (Tenn. Ct. App. 1983). That ruling, however, does not appear relevant to later proceedings.

The court explained that the motion did not meet standards for relief under Tenn. R. Civ. P. 60.02 and that sovereign immunity was a proper basis for dismissal of the suit.

### III. THE PROCEEDINGS IN CHANCERY COURT PART III

On April 4, 2012, before any hearing had been conducted on the defendants' motion to dismiss their Petition for Writ of Certiorari in Part II, Plaintiffs filed a Complaint which was assigned to Part III of the Chancery Court of Davidson County. The Complaint was subsequently amended. In reliance on the same facts asserted in the Writ of Certiorari case in Part II, Plaintiffs asserted claims for breach of contract, promissory estoppel, unjust enrichment, conversion, constructive trust, and violation of due process. They asked the court to grant them a collective award in the amount of $3,000.

The defendants responded to this second proceeding with a motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6), accompanied by a memorandum in support on the grounds of prior suit pending and sovereign immunity. After the entry of the final order in Chancery Part II, the defendants amended their motion by asserting the defense of *res judicata* in place of prior suit pending.

On August 6, 2012, the trial court in Part III entered a memorandum and order, granting TRICOR's motion to dismiss on the ground that the lawsuit was precluded by the doctrine of *res judicata.* That doctrine "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). The court examined each of the claims brought before it and concluded they all were litigated or could have been litigated in the proceedings before Part II of the Chancery Court.

Plaintiffs filed a petition to reconsider on September 7, 2012. The petition did not directly address the question of *res judicata*, but rather attacked the correctness of the judgment rendered by the Chancellor in Part II. The trial court entered an order denying the petition to reconsider and reiterated its analysis of the application of *res judicata,* again discussing the causes of action Plaintiffs brought in Part II and their disposition by that court.

### IV. THE SCOPE OF THIS APPEAL

Plaintiffs complain on appeal that neither of the trial courts below heard the merits of their claims, and they contend they have been deprived of their due process rights. The scope of this appeal is constrained, however, by the posture in which it comes to us. The only appeal properly before this court involves the orders rendered by Part III of the Chancery Court. The decisions arising from the proceedings in Part II of the Chancery Court

4

are not part of this appeal, except insofar as the ruling in Part III was based on *res judicata* as a result of the action in Part II.

Moreover, the scope of our review of the proceedings in Part III is limited by the fact that Plaintiffs failed to file a notice of appeal within thirty days of the entry of the final order in Part III of the Chancery Court, as is required by Rule 3 of the Tennessee Rules of Appellate Procedure. The thirty-day time limit is crucial to preserve appellate rights, for it is mandatory and jurisdictional in civil cases. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003).

The Tennessee Rules of Appellate Procedure expressly provide that this Court can neither waive nor extend the time for filing the notice of appeal. Tenn. R. App. P. 2; Tenn. R. App. P. 21(b); *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 869 (Tenn. Ct. App. 2008). In the absence of timely filing a notice of appeal under Rule 3, or other motion specified in Rule 4(b), review of a final order is foreclosed by the appellate courts. *See Third Nat'l Bank in Nashville v. Knobler*, 789 S.W.2d 254, 255 (Tenn. 1990); *Jefferson v. Pneumo Service Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985).

When certain post-trial motions are filed within thirty days of the entry of the final order, the time to file a notice of appeal runs from the entry of the order granting or denying such motion. Tenn. R. Civ. P. 4(b). It could be argued that Plaintiffs' "motion to reconsider" is equivalent to one of the post-trial motions specified in Tenn. R. Civ. P. 4(b).[2] In this case, however, the trial court entered its final order on August 6, 2012, and Plaintiffs filed their motion to reconsider on September 7, thirty-two days after the entry of the final order. If filed after thirty days, a Rule 4(b) motion does not extend the time for filing the notice of appeal.

## V. ANALYSIS

We may not consider Plaintiffs' appeal of the trial court's dismissal of their motion to reconsider unless we deem that motion to be a motion for relief from a final judgment or order under Tenn. R. Civ. P. 60.02. The trial court herein fully considered the motion to reconsider and entered an order explaining its reasons for denying it. Accordingly, we will presume the trial court considered the motion under Rule 60.02.

---

[2]The post-judgment motions specified in Tenn. R. App. P. 4(b) are a motion for directed verdict under Tenn. R. App. P. 50.02, a motion to amend or make additional findings of fact under Tenn. R. App. P. 52.02, a motion for new trial under Tenn. R. App. P. 59.07, and a motion to alter or amend the judgment under Tenn. R. App. P. 59.04.

As our Supreme Court has stated, "[r]ule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules. Because of the importance of this 'principle of finality,' the 'escape valve' should not be easily opened." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991) (citing *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990)); *see also*, *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010); *Henry v. Goins*, 104 S.W.3d 475, 482 (Tenn. 2003); *McNeary v. Baptist Mem'l Hosp.*, 360 S.W.3d 429, 441 (Tenn. Ct. App. 2011). "A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge; the scope of review is limited to whether the trial judge abused his discretion." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991) (citing *Toney v. Mueller Co.*, 810 S.W.2d at 147)).

Rule 60 relief may be granted on several possible grounds. Tenn. R. Civ. P. 60.02(1) allows relief in cases involving "mistake, inadvertence, surprise or excusable neglect." Tenn. R. Civ. P. 60.02(5) applies to "any other reason justifying relief from operation of the judgment." Plaintiffs alleged inadvertence on the part of the trial judge in the Part II case, asserting that the Chancellor's decision in the original action on sovereign immunity was a "result of inadvertence" because the Chancellor did not have "the particulars" before her "to determine if the legislature had provided an exception to the general rule." The trial court herein rejected the inadvertence argument and explained the basis for that rejection.

We agree with the trial court that the Chancellor's decision in the Part II case to dismiss on the basis of sovereign immunity was not inadvertent. The holding and its basis were clearly set out in the final order. Additionally, Plaintiffs filed a Rule 60 motion for relief with Part II asserting the Chancellor had made an error in her sovereign immunity ruling. The Chancellor in Part II denied that motion and again stated her reliance on sovereign immunity as a basis for dismissal. Accordingly, it is impossible to reconcile "inadvertence" with the specific and deliberate rulings of the trial judge in Part II.

We also note that Rule 60.02 is not designed to allow one trial court to disregard or set aside the final order of another court on the ground of inadvertence or other grounds set out in the rule. Such a motion is properly directed to the court that rendered the decision from which relief is being sought. We have decided that the trial court herein (Part III) was correct in denying the Rule 60 motion that was based on an allegation of inadvertence by another trial court (Part II), but also caution that the type of "inadvertence" Plaintiffs alleged is not the type to justify relief under Rule 60.

Accordingly, Plaintiffs are not entitled to relief from the Part III final judgment on the basis of inadvertence under Tenn. R. Civ. P. 60.02(1). We could instead consider Plaintiffs' appeal under the catch-all provision of Tenn. R. Civ. P. 60.02(5), but we note that 60.02(5)

has been construed very narrowly by Tennessee courts, and that numerous cases stand for the proposition that relief "for any other reason justifying relief from operation of the judgment" is limited to reasons of overriding importance, extraordinary circumstances, or extreme hardship. *See Banks*, 817 S.W.2d at 18; *Henderson v. Kirby*, 944 S.W.2d 602, 605 (Tenn. Ct. App. 1996); *Tyler v. Tyler,* 671 S.W.2d 492, 495 (Tenn. Ct. App. 1984); *Gaines v. Gaines,* 599 S.W.2d 561, 564 (Tenn. Ct. App. 1980).

This case does not present issues of overriding importance, extraordinary circumstances, or extreme hardship warranting post-judgment relief under the stringent standards of Rule 60.02(5). We accordingly hold that the trial court properly exercised its discretion by dismissing Plaintiffs' motion to reconsider.

## VI. CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
PATRICIA J. COTTRELL, JUDGE